# 2005 INDEPENDENT CONTRACTORS AGREEMENT

**AGREEMENT** between the undersigned **EMPLOYER,** GCA Services Group INC. hereinafter termed "Employer", and **SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 32BJ, AFL-CIO** hereinafter termed the "Union."

It is mutually agreed as follows:

## ARTICLE I - Mutual Obligations

1. The Employer obligates itself that it will in good faith comply with all of the provisions of this Agreement. The Union obligates itself and its members that they will in good faith comply with all of the provisions of this Agreement and that the workers will perform their work conscientiously, faithfully and efficiently under the terms of this Agreement.

Work performed pursuant to the terms of this collective bargaining agreement shall not be performed by persons not covered by the bargaining agreement except as provided in Article II.

2. This Agreement shall apply to all service employees employed in any facility, including residential buildings, in the City of New York, Nassau, Suffolk, Westchester, Putnam, Dutchess, Rockland, Orange and Sullivan counties, New Jersey (north of Route 195), Connecticut, and in such other areas that may come within the geographical jurisdiction of the Union. All terms and conditions of this Agreement as it applies to building employees shall apply except that wages of employees employed in Queens, Brooklyn, Bronx and Staten Island and wages of those employed at hospitals, department stores, schools, charitable, educational and religious institutions, race tracks, nursing homes, theaters, hotels, shopping malls, golf courses and bowling alleys in Manhattan, Queens, Brooklyn and Staten Island shall be negotiated separately, except that if an Employer fails to give the Union written notification of its intent to negotiate a wage rate pursuant to this Agreement within ninety (90) days of commencement of the job, the Employer shall be required to pay Class A Office Building rates provided for in Article X of this Agreement.

If an Employer fails to negotiate within ninety (90) days and loses the job within that ninety (90) days, it shall be required to pay Class A Office Building rates provided for in Article X of this Agreement.

In the event the Union and the Employer are unable to reach an agreement on wages, the Union shall have the right to strike and the Employer shall have the right to lockout.

All security employees shall be covered by this Agreement unless the Union and the Employer execute a separate collective bargaining agreement covering security guards.

170



The Employer shall be bound by each of the following agreements in the event the Employer performs work within the geographical areas subject to those agreements.

         a) The 2005 Long Island Independent Contractors Agreement
         b) The 2005 Independent Exterminators Agreement.
         c) The 2005 New Jersey Independent Contractors Agreement.
         d) The 2005 Hudson Valley Contractors Agreement.
         e) The 2005 Hartford County and Fairfield County Connecticut Agreements.
         f) The 2005 Independent Window Cleaners Agreement

3. The Employer taking over jobs in Queens, Brooklyn, Bronx and Staten Island, or at hospitals, department stores, schools, charitable, educational and religious institutions in Manhattan, Queens, Brooklyn and Staten Island, shall assume and be bound by the remaining term of any existing wage agreements between the Union and the predecessor Employer.

4. In the event that the Employer presently services or takes a job at a residential building, the terms of the Apartment Building Agreement existing at such location shall apply. In the event that no collective bargaining agreement between the Union and the Employer covering such location exists, then, in the event that such job(s) are located in Manhattan, Queens, Brooklyn or Staten Island, the terms of the standard Independent Apartment Building Agreement shall apply.

5. In the event that an Employer presently services or takes over a job at a facility within the geographical areas set forth in any of the Agreements listed in Section 2(a) through (f) hereof, it shall apply the terms of the relevant agreement.

6. In the event that an Employer presently services or takes over a job in Queens, Brooklyn, Bronx and Staten Island, or at hospitals, department stores, schools, charitable, educational and religious institutions, race tracks, nursing homes, theaters, hotels, shopping malls, golf courses, bowling alleys, transit terminals or residential buildings in Manhattan, Queens, Brooklyn and Staten Island, and demonstrates to the Union that a hardship exists with respect to the application of certain provisions of this Agreement or the Independent Apartment Building Agreement in residential buildings, the Union may, within its sole discretion, consent to negotiate with respect to such provisions of the Agreement.

7. (A) Route Work is all work performed by the Employer other than in buildings where the Employer contracts directly with the building owner and/or agent. An employee will receive the Route rate for any Route Work unless:

1) The Route Work was contracted for after April 1, 1981 or the Route Work is awarded to a replacement contractor after April 1, 1981 and a contractor that is party to a collective bargaining agreement with the Union is performing services directly for the building owner and/or agent.

2) The Route Work was contracted for after April 1, 1981 or the Route Work is awarded to a replacement contractor after April 1, 1981 and the employees are maintaining tenant space in

2

the building pursuant to a collective bargaining agreement directly with the building owner and/or agent.

3) The employees were formerly covered by a Local 32B collective bargaining agreement.

If any of the above conditions are met the employees shall receive the Building rate.

(B) "Building Work" is all work performed by the Employer where the Employer contracts directly with the building owner and/or agent. All employees performing Building Work shall receive the Building rate unless they are employed in a sole occupant building having less than 130,000 square feet that has been operated as a Route Job prior to May 1, 1962. Employees in such a sole occupant buildings will continue to receive the Route rate until the Route Work is awarded to a replacement contractor or the building ceases to be a sole occupant building.

(C) For the purpose of the Seniority and Layoff provision set forth in Article XIV, Section 11 and the Holiday provision set forth in Article XIV, Section 3, an employee shall be considered a Route employee if the employee is engaged in Route Work. An employee shall be considered a Building employee if the employee is engaged in Building Work. The type of work performed, not the rate of pay, shall determine whether the employee is a Route or Building employee.

### ARTICLE II - Union Responsibility and Union Security

1. The Union is recognized as the exclusive collective bargaining representative of all classifications of service employees as defined in Article I, Section 2, above.

2. There shall be a Union Shop throughout the term of this Agreement.

The "Union Shop" requires membership in the Union by every employee as a condition of employment after the thirtieth (30th) day following employment or the execution date of this Agreement, whichever is later, and requires that the Union shall not ask or require the Employer to discharge or otherwise discriminate against any employee except in compliance with the law.

In the event the Union security provision of this Agreement is held to be invalid, unenforceable or of no legal effect generally or with respect to any Employer because of interpretation or a change in federal or state statute, city ordinance or rule or decision of any government administrative body, agency or subdivision, the permissible Union security clause under such statute, decision or regulation shall be enforceable as a substitute for the Union security clause provided for herein.

3. Upon receipt by the Employer of a letter from the Union's Secretary-Treasurer requesting an employee's discharge because he has not met the requirements of this Article, unless the Employer questions the propriety of so doing, the employee shall be discharged within fifteen (15) day of said notice if prior thereto he does not take proper steps to meet said

3

requirement. If the Employer questions the propriety of the discharge, he shall immediately submit the matter to the Arbitrator. If the Arbitrator determines that the employee has not complied with Section 2, he shall be discharged within ten (10) days after written notice of the determination has been given to the Employer.

4. The Employer shall be responsible for all revenue lost by the Union by reason of any failure to discharge an employee who is not a member of the Union, if the Union has so requested in writing. In cases involving removal of employees for non-payment of dues, the Arbitrator shall have the authority to assess liquidated damages.

5. The Employer shall on execution of this Agreement submit to the Union a list of all locations in the City of New York, Nassau, Suffolk, Westchester, Putnam, Dutchess, Orange and Sullivan counties, New Jersey (north of Route 195), Connecticut and in such other areas that may come within the jurisdiction of the Union, presently being serviced by the Employer. Such list shall include the names and Social Security numbers and home addresses of the employees performing the work plus the hours of employment and the present wage rate and Union affiliation. The Employer shall immediately notify the Union in writing of the name, Social Security number and home address of each new employee engaged by the Employer. The Employer shall immediately notify the Union in writing on forms to be supplied by the Union as soon as a cancellation of an account becomes effective where Union members are employed. The Employer shall immediately notify the Union when the Employer acquires a new job.

When an Employer loses a route job where the employees are represented by the Union, the Employer shall not only notify the Union, but shall have an additional obligation to notify the employees on such job that another Employer will be taking over that job and that he or she should continue to report to the job as previously scheduled. Any failure to so notify shall make the Employer responsible for any loss of wages.

The Employer shall be liable for any lost wages and/or damages sustained by employees as a result of the Employer's willful failure to comply with the job cancellation notice and/or new job notification provisions of this Agreement.

6. For the purpose of determining the employees employed by the Employer who should be members of the Union under the terms of this Agreement, the Union shall have the right to inspect all the Employer's records and books including, but not limited to, the Employer's Social Security reports, all payroll reports, and any other record of employment (except the salaries of non-union supervisors). The Employer shall make such records available to the Union upon request thereof. The Union shall have the right to expedited arbitration in the event an Employer fails to comply with this right of inspection. The Health, Pension, Training, Legal and/or Supplemental Retirement and Savings Funds (SRSF) shall have the same right to inspect as the Union.

## ARTICLE III - Discharge

4

Employees shall not be discharged by the Employer except for justifiable cause. If an employee is unjustly discharged, he shall be reinstated to his former position without loss of seniority or rank and without salary reduction. The Arbitrator may determine whether, and to what extent, the employee shall be compensated by the Employer for time lost.

Any employee who is discharged shall be furnished a written statement of reasons for such discharge not later than five (5) working days after the date of discharge.

## ARTICLE IV - Checkoff

The Union does hereby authorize the Employer and the Employer does hereby agree to deduct monthly dues, initiation fees, American Dream Fund or Political Action Fund contributions, any assessments, fines or other fees due to the Union from each employee covered by this Agreement from the wages due to each and every employee during the term of this Agreement. The Employer agrees that such deductions shall constitute Trust Funds that will be forwarded by the Employer to the Union not later than the twentieth (20th) day of each and every month. It is understood and agreed that the Employer will make such deductions and authorizations will be signed by the employee affected, all in accordance with the pertinent provisions of existing law. The Union will furnish to the Employer the necessary authorization forms.

If the Employer fails to remit to the Union the dues or other monies deducted in accordance with this section by the twentieth (20th) day, the Employer shall pay interest on such dues or other monies at the rate of one percent per month beginning on the twenty-first (21st) day, unless the Employer can demonstrate the delay was for good cause due to circumstances beyond its control. The interest shall not be assessed for an Employer's initial failure to deduct voluntary political contributions until thirty (30) days after the Employer has received written notice from the Union of its failure to deduct.

If a signatory does not revoke his dues authorization at the end of the year following the date of authorization, or at the end of the current contract, whichever is earlier, it shall be deemed a renewal of authorization, irrevocable for another year, or until the expiration of the next succeeding contract, whichever is earlier.

## ARTICLE V - Grievance Procedure

1. The parties shall provide for a grievance procedure to perform the following functions:

(a) To endeavor to adjust all issues not covered by and not inconsistent with any provision of this Agreement and which the parties are not required to arbitrate under terms of this Agreement.

(b) To endeavor to adjust without arbitration any issue between the parties which under this Agreement the parties are obligated to submit to the Arbitrator. The cost of administering

5

Step II Grievance Meetings, including the retention of a mediator to facilitate resolution of grievances, shall be borne equally by the Employer and the Union.

2. (a)   The grievance may first be taken up directly with a representative of the Employer and a representative of the Union.

(b) If the grievance is not resolved it may be presented for resolution at a Step II Grievance Meeting.  Counsel for the Union and the Employer may be present at any grievance procedure meeting.

(c) If a grievance is not resolved through the steps of the grievance procedure it may be submitted to the Arbitrator, who shall be authorized to take jurisdiction upon the request of either party if there shall be unreasonable delay in the processing of the grievance.

(d) The failure to follow the steps of the grievance procedure shall not provide a party with the basis to object to the conduct of an arbitration.

(e) Any grievance, except as otherwise provided herein and except a grievance involving basic wage violations, including Pension, Health, Training, Legal and/or SRSF contributions as set forth in Article X, shall be presented to the Employer in writing one hundred and twenty (120) days of its occurrence, except for grievances involving suspension without pay or discharge, which shall be presented within forty-five (45) days, unless the Employer agrees to an extension, or the Arbitrator finds one should be granted for good cause shown.

## ARTICLE VI  - Arbitration

1. There shall at all times be a Contract Arbitrator to decide all differences arising between the parties as to interpretation, application or performance of any part of this Agreement and such other issues as the parties are expressly required to arbitrate before him under the terms of this Agreement.

2. The fee of the Contract Arbitrator and all reasonable expenses involved in his functions shall be borne fifty percent (50%) by the Employer and fifty percent (50%) by the Union, except that in the event the Employer is in violation of any obligation under the provisions relating to the Health, Pension, Training, Legal and/or SRSF Funds, wages, dues and initiation fees, or any other violations involving damages, then the Employer shall pay the full fee of the Contract Arbitrator and all expenses in connection with the arbitration of the dispute, including, but not limited to, counsel fees, auditor's fees, arbitration costs and fees and court costs, plus a minimum of fifteen percent (15%) per annum on all monies awarded by the Contract Arbitrator.

3. The Arbitrator shall initially schedule a hearing after either party has served written notice upon the other that the grievance procedure has not resulted in an adjustment.   The oath-taking and the period and the requirements for service of notice in the form prescribed by statute are hereby waived. The Arbitrator's award shall be made within thirty (30) days after the hearing closes. If the Arbitrator shall fail to render his written award within said thirty-day period, either

6

party may serve a written demand upon him that the award must be made within ten (10) days after said demand. The decision shall be rendered within such additional ten (10) day period unless the parties consent to an extension in writing or an illness of the Arbitrator delays such decision. By mutual consent, the time of both the hearing and decision may be extended in a particular case. In the event of a willful default by either party in appearing before the Arbitrator, after due written notice shall have been given to him, the Arbitrator is authorized to render his award upon the testimony of the adversary party.

Due written notice means mailing, faxing, telegraphing or hand delivery to the address specified in this Agreement

4. The procedure herein outlined in respect to matters over which the Contract Arbitrator has jurisdiction shall be the sole and exclusive method for the determination of all such issues, and said Arbitrator shall have the power to grant any remedy required to correct a violation of this Agreement, including, but not limited to, damages and mandatory orders, and said Arbitrator shall have the further power in cases of willful violations (violations reflective of a deliberate intent to violate this Agreement) to award appropriate remedies, including, but not limited to, damages, all costs and expenses incurred by the Union in the processing of the grievance and arbitration proceedings, and to issue mandatory orders, the award of the Arbitrator being final and binding upon the parties and the employee(s) involved; provided, however, that nothing herein shall be construed to forbid either of the parties from resorting to court for relief from, or to enforce rights under, any arbitration award.

5. In any proceeding to confirm an award, service may be made by registered or certified mail within or without the State of New York as the case may be.

6. Should either party fail to abide by an arbitration award within two (2) weeks after such award is sent by registered or certified mail to the parties, either party may, in its sole and absolute discretion, take any action necessary to secure such award, including, but not limited to, suits at law. Should either party bring such suit, it shall be entitled, if it succeeds, to receive from the other party all expenses for counsel fees and court costs.

7. Grievants attending grievances and arbitrations during their regularly scheduled hours shall be paid during such attendance. If a grievant requires any employee of the building to be a witness at the hearing and the Employer adjourns the hearing, the employee witness shall be paid by the Employer for his regularly scheduled hours during attendance at such hearing. This provision shall be limited to one employee witness.

No more than one adjournment per party shall be granted by the Arbitrator without the consent of the opposing party.

All Union claims are brought by the Union alone, and no individual shall have the right to compromise or settle any claim without the written permission of the Union.

7

In the event that the Union appears at an arbitration without the grievant, the Arbitrator shall conduct the hearing provided it is not adjourned. The Arbitrator shall decide the case based upon the evidence adduced at the hearing.

8. There is presently an Office of the Contract Arbitrator-Building Service Industry as contract arbitrator for all disputes. It is agreed by the parties hereto that the arbitrators serving such office shall also serve as contract arbitrators under this Agreement the arbitrators currently are:

John Anner, Stuart Bauchner, Noel Berman, Nicholas Cooney, John Dorsey, Howard Edelman, Robert Herzog, Theodore Lang, Marilyn Levine, Randi Lowitt, Earl Pfeffer and Bernard Young.

Any additional arbitrators designated to serve in the Office of Contract Arbitrator by the Union and the Realty Advisory Board on Labor Relations, Inc. (RAB) shall be deemed added to the list of contract arbitrators for this agreement.

In the event that one or more of the contract arbitrators is terminated by the Union, such arbitrator(s) shall automatically be deleted as contract arbitrator under this agreement.

In the event that one or more of the contract arbitrators is terminated by the RAB, the Employer may terminate such arbitrator by giving thirty (30) days written notice to the Union.

## ARTICLE VII - Strikes, Stoppages, Lockouts

1. There shall be no work stoppage, strike, lockout or picketing, except as provided in Article I, Section 2, and Sections 2 and 3 of this Article. If this provision is violated, the matter may be submitted immediately to the Arbitrator.

2. If an Arbitrator's award or a judgment against any Employer is not complied with within three (3) weeks after such award, or notice if such judgment is given pursuant to law, is sent by registered or certified mail to the Employer, at his last known address, the Union may order a stoppage of work, strike or picketing to enforce such award or judgment and it may also compel payment of lost wages to any employee for the period he engaged in such activity. Upon compliance with the award or judgment and payment of lost wages, such activity shall cease.

3. The Union may order a work stoppage, strike or picketing where work previously performed by members of the bargaining unit is being performed by persons outside of the bargaining unit, provided that seventy-two (72) hours' written or telegraphic notice is given to the Employer of the Union's intention to do so.

4. The Union shall not be held liable for any violation of this Article where it appears that it has taken all reasonable steps to avoid and end the violation.

8

5. No employee covered by this Agreement shall be required by the Employer to pass a lawful picket line established by any local of the Service Employees International Union in an authorized strike, including a lawful picket line established by Local 32BJ pursuant to an authorized strike at another job location.

6. The Employer will not do the work of the striking employees if the Union is conducting an authorized strike.

7. The Employer shall provide staffing information to the Union upon its request for any job which it currently services within four (4) business days of the request. In the event that such information is not provided, the Union shall have the right to engage in a work stoppage until such information is supplied. During the period of work stoppage, the employees shall continue to receive their regular wages and benefits.

## ARTICLE VIII - Duration

This Agreement shall be effective from January 1, 2005, to December 31, 2007.

With regard to guards, this Agreement shall continue in effect until February 29, 2008, but all economic terms in the successor Agreement to this contract shall be retroactive to January 1, 2008.

Upon the expiration date of this Agreement as set forth above, this Agreement shall thereafter continue in full force and effect for an extended period until a successor Agreement shall have been executed. During the extended period, all terms and conditions hereof shall be in effect subject to the provisions of this paragraph. During the extended period, the Employer and the Union shall negotiate for a successor Agreement retroactive to the expiration date, and all benefits and improvements in such successor Agreement shall be retroactive, if such Agreement shall so provide. In the event the parties are unable to agree upon terms of a successor Agreement, either party, upon three (3) days' written notice to the other party, may cancel this Agreement.

## ARTICLE IX - Health, Pension, Training, Legal and Supplemental Retirement & Savings Funds

### A. Health Fund

1. The Employer agrees to make payment into a health trust fund, known as the "Building Service 32BJ Health Fund," to cover employees covered by this Agreement who work more than two (2) days each workweek, including such employees of other Employers in or connected with the industry for whom contributions are paid, with health benefits under such provisions, rules and regulations as may be determined by the Trustees of the Fund, as provided in the Agreement and Declaration of Trust; provided, however, that the Employer may, by

9

making the required payments into the Fund, cover such other of his employees as he may elect, and provided such coverage is in compliance with law and the Trust Agreement.

Employees who are on workers' compensation or who are receiving disability benefits or disability pension shall be covered by the Health Fund until they may be covered by Medicare or thirty (30) months from the date of disability, whichever is earlier.

In no event shall any employee who was previously covered for such health benefits lose such coverage as a result of the change in this provision, and the Employer shall be obligated to make payments for such employees.

2. Effective January 1, 2005, the Employer shall contribute to the Health Fund $8,710.64 per year for each employee, payable when and how the Trustees determine, to cover employees and their dependent families with health benefits as agreed by the collective bargaining parties, and under such provisions, rules and regulations as may be determined by the Trustees.

For the period October 1, 2004 to December 31, 2004 (the "stub period"), there shall be a one time lump sum payment of $494.00 that shall be paid by the Employer for each covered employee at any time between October 1, 2004 and March 31, 2005 (the accrual date). Only one Employer shall be required to make the contribution for any covered employee for the stub period, which, unless the contribution is made earlier, shall be the Employer of the employee as of the accrual date.

3. Effective January 1, 2006, the Health Fund contribution shall be $9,750.64 per year for each employee.

4. Effective January 1, 2007, the Health Fund contribution shall be $10,790.64 per year for each employee.

5. Any Employer who has a plan in effect prior to the effective date of this Agreement which provides health benefits the equivalent of, or better than, the benefits provided for herein, and the cost of which to the Employer is at least as great, may cover his employees under his existing plan or under this Fund. If the Trustees decide the existing plan does not provide equivalent benefits, but does provide health benefits superior to one or more types of health benefits under this Fund, the Employer may participate in the Fund wholly, or partially for hospitalization and/or surgical coverage, and make his payments to the Fund in the amount determined by the Trustees uniformly for all similarly participating Employers.

**B. Pension Fund**

1. The Building Service 32BJ Pension Fund shall continue in force and effect in accordance with its provisions, which include the power of its Trustees to revise the amounts of the pension benefits and the conditions under which benefits will be paid, and to continue to cover such employees of other Employers in or connected with the industry for whom contributions are paid, provided such coverage is in compliance with law and the Trust Agreement.

10

Employees unable to work and who are on disability benefits or workers' compensation shall continue to accrue pension benefits during the periods of disability up to six (6) months or the period of disability, whichever is sooner.

2. Effective January 1, 2005 the Employer shall contribute the sum of $43.75 per week for every regular employee as defined in the Building Service 32BJ Pension Plan, as it may be amended.

3. Effective January 1, 2006, the Pension contribution shall be $49.75 per week for every regular employee as defined in the Building Service 32BJ Pension Plan, as it may be amended.

4. Effective January 1, 2007, the Pension contribution shall be $58.75 per week for every regular employee as defined in the Building Service 32BJ Pension Plan, as it may be amended.

5. If the Employer has in effect a pension and retirement plan which has been determined by the Trustees to provide benefits equivalent or superior to those provided under the Building Service 32BJ Pension Plan, it may continue such plan provided it continues to provide retirement benefits equivalent or superior to the benefits that are provided under the Building Service 32BJ Pension Plan during the term of this Agreement, and it shall be relieved of any obligation to make payments into the Fund.

6. If the Employer has an existing plan, as referred to above, it shall not discontinue or reduce benefits without prior Trustee approval and shall remain obligated to the employee(s) for whatever benefits they may be entitled.

7. In no event shall the Trustees or any of them, the Union or the Employer, directly or indirectly, by reason of this Agreement, be understood to consent to the extinguishment, change or diminution of any legal rights, vested or otherwise, that anyone may have in the continuation in existing form of any such Employer pension plan, and the Trustees or any of them, the Union and the Employer, shall be held harmless by an Employer against any action brought by anyone covered under such Employer's plan asserting a claim based upon anything done pursuant to Section 6 of this Article. Notice of the pendency of any such action shall be given the Employer who may defend the action on behalf of the indemnitee.

## C. Education and Training Fund

Effective January 1, 2005, the Employer agrees to contribute to the Thomas Shortman Training, Scholarship and Safety Fund. The rate of contribution shall be $145.60 per year for each employee.

The Thomas Shortman Fund may establish a program to insure on-the-job safety and to assist employees in other adjunct functions relating to their employment, provided that such programs shall meet the requirements of law.

11

### D. Legal Services Fund

The Employer shall contribute $223.60 per year per employee to the Building Services 32BJ Legal Services Fund payable as the Trustees determine.

### E. Supplemental Retirement and Savings Fund

The Employer shall continue to pay the weekly contribution of $13.00 to the Building Service 32BJ Supplemental Retirement and Savings Fund (SRSF) per employee.

### F. Provisions Applicable to All Funds

1. If the Employer fails to make required reports or payments to the Funds, the Trustees may in their sole and absolute discretion take any action necessary, including, but not limited to, immediate arbitration and suits at law, to enforce such reports and payments, together with interest and liquidated damages as provided in the Funds' Trust Agreements, and any and all expenses of collection, including, but not limited to, counsel fees, arbitration costs and fees, court costs, auditors' fees and interest.

Where a contributing Employer is regularly and consistently delinquent, the Trustees in their discretion may require such security as they deem necessary.

2. Any contributions and benefits required hereunder shall be increased by any amount and in the same manner as contributions and benefits may be increased in the 2005 Commercial Building Agreement (or its successor) between the Union and the RAB, including such increases as may be required by the Health Fund Maintenance of Benefits Provision as set forth in Article XI(A)(6) of such agreement, and if service fees are required to be paid, the same fees shall be required to be paid hereunder.

3. The Trustees of the Funds shall make such amendments to the Trust Agreement, and shall adopt such regulations, as may be required to conform to applicable law, and which shall in any case provide that employees whose work comes within the jurisdiction of the Union (which shall not be considered to include anyone in an important managerial position) may only be covered for benefits if their Employer has a collective bargaining agreement with the Union. Any dispute about the Union's jurisdiction shall be settled by the Arbitrator if the parties cannot agree.

4. Employees hired on or after April 1, 1996, shall have a waiting period of three (3) months before becoming eligible to be participants in the Funds, and no contributions shall be made on behalf of the employees over the three-month period.

5. The President of the Union and the President of the RAB may determine, in their discretion, prior to the beginning of the contract years beginning January 1, 2006 and January 1, 2007, to divert any portion of the scheduled increases in the annual rate of Employer Health Fund contributions to the Training Fund and/or the Legal Fund.

12

# ARTICLE X - Classification and Wages

## A. CLASSIFICATIONS

1. Buildings are classified as A, B or C buildings, according to the following definitions:

(a)   Class A building-gross area of more than 280,000 square feet.
(b)   Class B building-gross area of more than 120,000 and not over 280,000 square feet.
(c)   Class C building-gross area of less than 120,000 square feet.

2. Gross area of a LOFT building is the sum total of areas existing on the various floors of a loft building, including the basement space, but excluding that portion of the penthouse used for the machinery and appurtenances of the building and that portion of the basement used for the public utilities and general operation of the property .

Gross area of an entire floor shall be computed by measuring from the inside plaster surfaces of all exterior walls of space encompassed in a tenant's premises, including columns, corridors, toilets, slop sinks, elevator shafts, etc., except that space reserved for the fire tower court.

3. Gross area of an OFFICE building is the sum total of areas existing on the various floors of the building, including the basement space, but excluding that portion of the penthouse used for the machinery and appurtenances of the building and that portion of the basement used for the public utilities and general operation of the property.

Gross area of an entire floor shall be computed by measuring from the inside plaster surfaces of all exterior walls of space used by the tenant on the floor, including columns and corridors, but excluding toilets, porter's closets, slop sinks, elevator shafts, stairs, fire towers, vents, pipe shafts, meter closets, flues and stacks, and any vertical shafts and their enclosing walls. No deductions shall be made for columns, pilasters or projections necessary to the building.

## B. WAGES

1. Effective January 1, 2005, minimum regular wage rates shall be:

13

## Minimum Wage Rates - January 1, 2005 - December 31, 2005

### Building Work

### OFFICE BUILDINGS

| | CLASS A | | CLASS B | | CLASS C | |
|---|---|---|---|---|---|---|
| | Regular Hourly Rate | 40 Hour Wage | Regular Hourly Rate | 40 Hour Wage | Regular Hourly Rate | 40 Hour Wage |
| Handyperson | $20.398 | $815.92 | $20.367 | $814.68 | $20.323 | $812.92 |
| Foreperson | $20.2855 | $811.42 | $20.2545 | $810.18 | $20.2105 | $808.42 |
| Starter | $20.2855 | $811.42 | $20.2545 | $810.18 | $20.2105 | $808.42 |
| Other | $18.573 | $742.92 | $18.542 | $741.68 | $18.498 | $739.92 |
| *Guards | $17.116 | $684.64 | $17.116 | $684.64 | $17.116 | $684.64 |

*Guards hired before January 1, 1978, shall receive the rate of "Other."

### LOFT BUILDINGS

| | CLASS A | | CLASS B | | CLASS C | |
|---|---|---|---|---|---|---|
| | Regular Hourly Rate | 40 Hour Wage | Regular Hourly Rate | 40 Hour Wage | Regular Hourly Rate | 40 hour Wage |
| Handyperson | $20.348 | $813.92 | $20.275 | $811.00 | $20.152 | $806.08 |
| Foreperson | $20.2545 | $810.18 | $20.2055 | $808.22 | $20.0645 | $802.58 |
| Starter | $20.2545 | $810.18 | $20.2055 | $808.22 | $20.0645 | $802.58 |
| Other | $18.542 | $741.68 | $18.493 | $739.72 | $18.452 | $738.08 |
| *Guards | $17.116 | $684.64 | $17.116 | $684.64 | $17.116 | $684.64 |

*Guards hired before January 1, 1978, shall receive the rate of "Other."

Effective January 1, 2006, each employee covered by this Agreement shall receive a wage increase of $0.25 for each regular, straight-time hour worked.

Additionally, the minimum hourly rate differential for handypersons, forepersons and starters (which shall include all employees doing similar or comparable work by whatever title known) shall be increased by $0.025 respectively for each straight-time hour worked to the extent necessary to bring them up to the contract minimum.

14

Minimum regular wage rates shall be:

### Minimum Wages Rates - January 1, 2006 - June 30, 2006

#### OFFICE BUILDINGS

|  | CLASS A | | CLASS B | | CLASS C | |
|---|---|---|---|---|---|---|
|  | Regular Hourly Rate | 40 Hour Wage | Regular Hourly Rate | 40 Hour Wage | Regular Hourly Rate | 40 Hour Wage |
| Handyperson | $20.673 | $826.92 | $20.642 | $825.68 | $20.598 | $823.92 |
| Foreperson | $20.5605 | $822.42 | $20.5295 | $821.18 | $20.4855 | $819.42 |
| Starter | $20.5605 | $822.42 | $20.5295 | $821.18 | $20.4855 | $819.42 |
| Other | $18.823 | $752.92 | $18.792 | $751.68 | $20.4855 | $819.42 |
| *Guards | $17.366 | $694.64 | $17.366 | $694.64 | $18.748 | $749.92 |
|  |  |  |  |  | $17.366 | $694.64 |

*Guards hired before January 1, 1978, shall receive the rate of "Other."

#### LOFT BUILDINGS

|  | CLASS A | | CLASS B | | CLASS C | |
|---|---|---|---|---|---|---|
|  | Regular Hourly Rate | 40 Hour Wage | Regular Hourly Rate | 40 Hour Wage | Regular Hourly Rate | 40 hour Wage |
| Handyperson | $20.623 | $824.92 | $20.550 | $822.00 | $20.427 | $817.08 |
| Foreperson | $20.5295 | $821.18 | $20.4805 | $819.22 | $20.3395 | $813.58 |
| Starter | $20.5295 | $821.18 | $20.4805 | $819.22 | $20.3395 | $813.58 |
| Other | $18.792 | $751.68 | $18.743 | $749.72 | $20.3395 | $813.58 |
| *Guards | $17.366 | $694.64 | $17.366 | $694.64 | $18.702 | $748.08 |
|  |  |  |  |  | $17.366 | $694.64 |

*Guards hired before January 1, 1978, shall receive the rate of "Other."

Effective July 1, 2006, each employee covered by this Agreement shall receive a wage increase of $0.175 for each regular, straight-time hour worked.

Additionally, the minimum hourly rate differential for handypersons, forepersons and starters (which shall include all employees doing similar or comparable work by whatever title known) shall be increased by $0.025 respectively for each regular, straight-time hour worked to the extent necessary to bring them up to the contract minimum.

15

Minimum regular wage rates shall be:

## Minimum Wages Rates - July 1, 2006 - December 31, 2006

### OFFICE BUILDINGS

| | CLASS A | | CLASS B | | CLASS C | |
|---|---|---|---|---|---|---|
| | Regular Hourly Rate | 40 Hour Wage | Regular Hourly Rate | 40 Hour Wage | Regular Hourly Rate | 40 Hour Wage |
| Handyperson | $20.873 | $834.92 | $20.842 | $833.68 | $20.798 | $831.92 |
| Foreperson | $20.7605 | $830.42 | $20.7295 | $829.18 | $20.6855 | $827.42 |
| Starter | $20.7605 | $830.42 | $20.7295 | $829.18 | $20.6855 | $827.42 |
| Other | $18.998 | $759.92 | $18.967 | $758.68 | $18.923 | $756.92 |
| *Guards | $17.541 | $701.64 | $17.541 | $701.64 | $17.541 | $701.64 |

*Guards hired before January 1, 1978, shall receive the rate of "Other."

### LOFT BUILDINGS

| | CLASS A | | CLASS B | | CLASS C | |
|---|---|---|---|---|---|---|
| | Regular Hourly Rate | 40 Hour Wage | Regular Hourly Rate | 40 Hour Wage | Regular Hourly Rate | 40 hour Wage |
| Handyperson | $20.823 | $832.92 | $20.75 | $830.00 | $20.627 | $825.08 |
| Foreperson | $20.7295 | $829.18 | $20.6805 | $827.22 | $20.5395 | $821.58 |
| Starter | $20.7295 | $829.18 | $20.6805 | $827.22 | $20.5395 | $821.58 |
| Other | $18.967 | $758.68 | $18.918 | $756.72 | $18.877 | $755.08 |
| *Guards | $17.541 | $701.64 | $17.541 | $701.64 | $17.541 | $701.64 |

*Guards hired before January 1, 1978, shall receive the rate of "Other"

Effective January 1, 2007, each employee covered by this Agreement shall receive a wage increase of $0.25 for each regular, straight-time hour worked.

Additionally, the minimum hourly rate differential for handypersons, forepersons, and starters (which shall include all employees doing similar or comparable work by whatever title known), shall be increased by $0.025 respectively for each regular straight-time hour worked to the extent necessary to bring them up to the contract minimum.

16

Minimum regular wage rates shall be:

## Minimum Wages Rates – January 1, 2007- June 30, 2007

### OFFICE BUILDINGS

| | CLASS A | | CLASS B | | CLASS C | |
|---|---|---|---|---|---|---|
| | Regular Hourly Rate | 40 Hour Wage | Regular Hourly Rate | 40 Hour Wage | Regular Hourly Rate | 40 Hour Wage |
| Handyperson | $21.148 | $845.92 | $21.117 | $844.68 | $21.073 | $842.92 |
| Foreperson | $21.0355 | $841.42 | $21.0045 | $840.18 | $20.9605 | $838.42 |
| Starter | $21.0355 | $841.42 | $21.0045 | $840.18 | $20.9605 | $838.42 |
| Other | $19.248 | $769.92 | $19.217 | $768.68 | $19.173 | $766.92 |
| *Guards | $17.791 | $711.64 | $17.791 | $711.64 | $17.791 | $711.64 |

*Guards hired before January 1, 1978, shall receive the rate of "Other."

### LOFT BUILDINGS

| | CLASS A | | CLASS B | | CLASS C | |
|---|---|---|---|---|---|---|
| | Regular Hourly Rate | 40 Hour Wage | Regular Hourly Rate | 40 Hour Wage | Regular Hourly Rate | 40 hour Wage |
| Handyperson | $21.098 | $843.92 | $21.025 | $841.00 | $20.902 | $836.08 |
| Foreperson | $21.0045 | $840.18 | $20.9555 | $838.22 | $20.8145 | $832.58 |
| Starter | $21.0045 | $840.18 | $20.9555 | $838.22 | $20.8145 | $832.58 |
| Other | $19.217 | $768.68 | $19.168 | $766.72 | $19.127 | $765.08 |
| *Guards | $17.791 | $711.64 | $17.791 | $711.64 | $17.791 | $711.64 |

*Guards Hired Before January 1, 1978, shall receive the rate of "Other."

Effective July 1, 2007, each employee covered by this Agreement shall receive a wage increase of $0.25 for each regular, straight-time hour worked.

Additionally, the minimum hourly rate differential for handypersons, forepersons, and starters (which shall include all employees doing similar or comparable work by whatever title

17

known), shall be increased by $0.025 respectively for each regular straight-time hour worked to the extent necessary to bring them up to the contract minimum.

Minimum regular wage rates shall be:

## Minimum Wages Rates – July 1, 2007- December 31, 2007

### OFFICE BUILDINGS

| | CLASS A | | CLASS B | | CLASS C | |
|---|---|---|---|---|---|---|
| | Regular Hourly Rate | 40 Hour Wage | Regular Hourly Rate | 40 Hour Wage | Regular Hourly Rate | 40 Hour Wage |
| Handyperson | $21.423 | $856.92 | $21.392 | $855.68 | $21.348 | $853.92 |
| Foreperson | $21.3105 | $852.42 | $21.2795 | $851.18 | $21.2355 | $849.42 |
| Starter | $21.3105 | $852.42 | $21.2795 | $851.18 | $21.2355 | $849.42 |
| Other | $19.498 | $779.92 | $19.467 | $778.68 | $19.423 | $776.92 |
| *Guards | $18.041 | $721.64 | $18.041 | $721.64 | $18.041 | $721.64 |

*Guards hired before January 1, 1978, shall receive the rate of "Other."

### LOFT BUILDINGS

| | CLASS A | | CLASS B | | CLASS C | |
|---|---|---|---|---|---|---|
| | Regular Hourly Rate | 40 Hour Wage | Regular Hourly Rate | 40 Hour Wage | Regular Hourly Rate | 40 hour Wage |
| Handyperson | $21.373 | $854.92 | $21.30 | $852.00 | $21.177 | $847.08 |
| Foreperson | $21.2795 | $851.18 | $21.2305 | $849.22 | $21.0895 | $843.58 |
| Starter | $21.2795 | $851.18 | $21.2305 | $849.22 | $21.0895 | $843.58 |
| Other | $19.467 | $778.68 | $19.418 | $776.72 | $19.377 | $775.08 |
| *Guards | $18.041 | $721.64 | $18.041 | $721.64 | $18.041 | $721.64 |

*Guards hired before January 1, 1978, shall receive the rate of "Other."

18

forth:     The minimum regular hourly wage rates for route jobs shall then be as hereunder set

### ROUTE WORK

### Minimum Wage Rates - January 1, 2005 - December 31, 2005

|  | REGULAR HOURLY WAGE | 40 HOUR WAGE |
|---|---|---|
| HANDYPERSONS | $19.664 | $786.56 |
| FOREPERSONS | $19.5515 | $782.06 |
| STARTERS | $19.5515 | $782.06 |
| OTHERS | $17.639 | $705.56 |
| *GUARDS | $16.4315 | $657.26 |

*Guards hired on or before January 25, 1978, shall receive the rate of "Other."

### Minimum Wage Rates - January 1, 2006 - June 30, 2006

|  | REGULAR HOURLY WAGE | 40 HOUR WAGE |
|---|---|---|
| HANDYPERSONS | $19.939 | $797.56 |
| FOREPERSONS | $19.8265 | $793.06 |
| STARTERS | $19.8265 | $793.06 |
| OTHERS | $17.889 | $715.56 |
| *GUARDS | $16.6815 | $667.26 |

*Guards hired on or before January 25, 1978, shall receive the rate of "Other."

### Minimum Wage Rates - July 1, 2006 - December 31, 2006

|  | REGULAR HOURLY WAGE | 40 HOUR WAGE |
|---|---|---|

19

| HANDYPERSONS | $20.139 | |
| FOREPERSONS | $20.0265 | $805.56 |
| STARTERS | $20.0265 | $801.06 |
| OTHERS | $18.064 | $801.06 |
| *GUARDS | $16.8565 | $722.56 |
| | | $674.26 |

*Guards hired on or before January 25, 1978, shall receive the rate of "Other."

### Minimum Wage Rates - January 1, 2007 – June 30, 2007

| | REGULAR HOURLY WAGE | 40 HOUR WAGE |
|---|---|---|
| HANDYPERSONS | $20.414 | |
| FOREPERSONS | $20.3015 | $816.56 |
| STARTERS | $20.3015 | $812.06 |
| OTHERS | $18.314 | $812.06 |
| *GUARDS | $17.1065 | $732.56 |
| | | $684.26 |

*Guards hired on or before January 25, 1978, shall receive the rate of "Other."

### Minimum Wage Rates - July 1, 2007 – December 31, 2007

| | REGULAR HOURLY WAGE | 40 HOUR WAGE |
|---|---|---|
| HANDYPERSONS | $20.689 | |
| FOREPERSONS | $20.5765 | $827.56 |
| STARTERS | $20.5765 | $823.06 |
| OTHERS | $18.564 | $823.06 |
| *GUARDS | $17.3565 | $742.56 |
| | | $694.26 |

*Guards hired on or before January 25, 1978, shall receive the rate of "Other."

2. a) Effective January 1, 2006, in the event that the percentage increase in the cost of living [Consumer Price Index for the City of New York-Metropolitan Area (New York-New Jersey) Urban Wage Earners and Clerical Workers] from November 2004 to November 2005 exceeds 6.5%, then, in that event, an increase of $.10 per hour for each full 1% increase in the cost of living in excess of 6.5% shall be granted effective for the first full workweek commencing after January 1, 2006. In no event shall said increase pursuant to this provision exceed $.20 per hour. In computing increases in the cost of living above 6.5%, less than .5% shall be ignored and increases of .5% or more shall be considered a full point. Any increase hereunder shall be added to the minimum.

20

b) Effective January 1, 2007, in the event that the percentage increase in the cost of living [Consumer Price Index for the City of New York-Metropolitan Area (New York-New Jersey) Urban Wage Earners and Clerical Workers] from November 2005 to November 2006 exceeds 6%, then, in that event, an increase of $.10 per hour for each full 1% increase in the cost of living in excess of 6% shall be granted effective for the first full workweek commencing after January 1, 2007. In no event shall said increase pursuant to this provision exceed $.20 per hour. In computing increases in the cost of living above 6%, less than .5% shall be ignored and increases of .5% or more shall be considered a full point. Any increase hereunder shall be added to the minimum.

3. In filling vacancies by replacements, the replacement employee shall receive the same wages as the employee replaced unless otherwise provided in this Agreement (excluding guards hired on or after January 25, 1978), excluding extra pay attributable to years of service or special consideration beyond the requirements of the job which the replacement is not qualified to meet.

## ARTICLE XI - Hours and Overtime

1. All employees shall be paid at the rate of time and one-half for all hours worked in excess of eight (8) hours per day or forty (40) hours per week, whichever is greater.

2. Saturday and Sunday are premium days for all employees (excluding guards hired on or after January 25, 1978) and work performed on such days shall be paid for at the rate of time and one-half the regular, straight-time hourly rate of pay.

In determining whether an employee's work shift is to be considered as falling on Saturday or Sunday, for the purpose of premium pay, it is understood that the meaning of Saturday or Sunday work shall be the same as now applies or, where there is no such practice, shall be based upon the holiday premium pay practice.

3. The weekly working hours for elevator operators and starters shall include two twenty (20) minute relief periods each day, but shall exclude luncheon recess of not less than forty-five (45) minutes or more than one (1) hour each day.

Employees, other than those referred to in the paragraph above, the majority of whose hours fall between 7 P.M. and 6 A.M., shall receive a fifteen (15) minute relief/ lunch period. At the option of the Employer, the employees who work seven (7) hours or more per day shall, in addition to their regular pay for scheduled hours, receive either additional straight-time pay for one-half (1/2) hour or be relieved one-half (1/2) hour earlier. Employees working six (6) hours per day, shall receive an additional twenty-five (25) minutes straight-time pay or be relieved twenty-five (25) minutes earlier. Employees working five (5) hours per day, shall receive an additional fifteen (15) minutes straight-time pay or be relieved fifteen (15) minutes earlier. This change shall in no way affect the overtime provisions of the contract, nor affect the Employer's right to reschedule hours to provide necessary continuity of coverage.

21

This Section 3 shall not apply to employees engaged in Route Work for whom relief periods and luncheon recess shall continue as in the past.

4. Except for required relief periods and luncheon recess, hours of work in each day shall be continuous and no employee shall be required to take a relief period or time off in any day in excess of the required relief periods and said luncheon recess, without having said excess relief period or time off charged as working time. There shall be no split shifts.

5. Any employee called in to work by the Employer for any time not consecutive with his regular schedule shall be paid for at least four (4) hours overtime.

6. Every employee shall be entitled to two (2) consecutive days off in any seven (7) days, and any work performed on such days shall be considered overtime and paid for at the rate of time and one-half.

7. No regular employee or his or her replacement shall have his or her regular working hours reduced in order to effect a corresponding reduction in pay.

Any employee classified as "other" who substitutes for an absent "foreperson" for more than four (4) hours shall receive the "foreperson" wage rate for the entire shift.

Employees required to work overtime shall be paid at least one hour at the applicable rate, except for employees working overtime due to absenteeism or lateness.

Any employee who has worked eight hours in a day and is required to work at least four hours of overtime in that day shall be given a $15.00 meal allowance.

8. Any employee who spends one full week or more performing work in a higher-paying category shall receive the higher rate of pay for such service.

9. No overtime shall be given for disciplinary purposes. An Employer shall not require an employee to work an excessive amount of overtime.

10. The Employer agrees to use its best efforts to provide a minimum of sixteen (16) hours off between shifts for its employees.

## ARTICLE XII - Management Rights and Obligations; Seniority and Job Security

1. (a) The Union recognizes the right of the Employer to direct and control its policies, subject to the provisions of this Agreement.

(b) The Union and its members will cooperate with the Employer within the provisions of this Agreement to facilitate the efficient operation of jobs.

22

(c) If an employee is removed from a location at the demand of a customer, the Employer may remove the employee from further employment at that location, provided there is a good faith reason to justify such removal, apart from the demand itself. Unless the Employer has cause to discharge the employee, the Employer will place the employee in a similar job at another facility within the same county covered by this Agreement, without loss of entitlement seniority or reduction in pay or benefits and pay Displacement Pay to such employee equivalent to the Termination Pay Schedule set forth in Article XIII, Sec. 26(a), but not less than two (2) weeks' pay.

In the event an employee is transferred to another building and is not filling a vacant position, the Employer shall seek volunteers on the basis of seniority within the job title. If there are no volunteers, the junior employees shall be selected for transfer and receive the same Displacement Pay and protection afforded to the transferred employee.

(d) With respect to all jobs contracted for by the Employer where members of the Union were employed when the contract was acquired, it is agreed that the Employer shall retain at least the same number of employees, the same employees, under the same work schedule and assignments including starting times of each employee, except where this is an appreciable decrease in the work to be done according to the job specifications or the customer's requirements.

(e) The Employer shall not, on any job, decrease the number of employees and/or the hourly work schedule except where there is an appreciable decrease in the work to be done according to the job specifications or the customer's requirements.

(f) In the event the Employer desires to decrease the number of employees and/or hourly work schedule on any job specified in (d) or (e) above, he must, before doing so, request such decrease in writing from the Union President and obtain the written consent of the Union. The Union's discretion with respect to the granting or denying of such consents shall be absolute and not subject to arbitration.

A reduction in force without the consent of the Union shall be a violation of the Agreement and the Employer shall be required to restore the work force with full back pay and benefits to any employees laid off. To the extent that employees were not laid off, back pay or the remainder theretofore shall be divided amongst the remaining employees in the building.

The arbitrator shall not grant any adjournments of reduction in force cases without mutual consent.

(g) The Employer shall follow and be bound by the rules of seniority of all members of the bargaining unit theretofore employed on all jobs, in respect to job security, promotion, accrued vacations and other benefits.

(h) For any violation by the Employer of the aforementioned provisions, which deal with the necessity of obtaining the written consent of the Union regarding any decrease in the number of employees and/or hourly work schedules and maintenance of conditions on all jobs, the

23

Employer shall pay the full fee of the Contract Arbitrator and all expenses in connection with the arbitration of the dispute.

(i) Any Employer who adds employees to any job in anticipation of being terminated from that job shall be required to place the added employees on its payroll permanently. These employees shall not replace any regular employees already on the payroll of the Employer.

(j) In the event the Employer reduces staff in any job without the consent of the Union and subsequently loses that job to another Employer, the Employer making the reduction shall be responsible for the wages and benefits, of all employees so reduced, from the date of the unauthorized reduction, until the current Employer is legally able to renegotiate its contract with the customer. From that point forward, the current Employer shall restore the staffing to its original level.

(k) In the event that the Employer desires to implement a reduction in work force among its employees working in office buildings for anyone of the following reasons:

(1)  a change in work specification or work assignment which results in a reduction of work,
(2)  elimination of all or part of specified work;
(3)  the tenant performing the work itself;
(4)  introduction of technological advances;
(5)  change in the nature or type of occupancy;

it may do so provided that it can demonstrate to a special committee consisting of the President of the Union, or his designee, and the Employer or its designee, that such reduction is justified. In making its determination, the Committee shall consider whether the requested reduction is accompanied by a corresponding reduction in work, existing productivity levels in the building and any other factors which the Committee may deem relevant. No reduction may be implemented without the unanimous agreement of the Committee. The decision of the Committee shall be final and binding and not reviewable under the arbitration provisions of this Agreement.

The Committee shall be convened upon the written request of the Employer. The written request must be made to the President of the Union by registered or certified mail (return receipt requested). The Committee must be convened within sixty (60) days of the receipt of such written request. In the event that the Committee is not convened by the sixtieth (60th) day and the Employer is still requesting a reduction in force, it shall serve another written notice on the President of the Union by registered or certified mail (return receipt requested) that it intends to implement the reduction within ten (10) days. If the Committee does not convene within ten (10) days after such notice (except for adjournments requested by the Employer) the reduction in force may be implemented as provided herein.

2. As to buildings where the building owner and/or agent is committed to the 2005 Commercial Building Agreement between the RAB and the Union or the building owner and/or agent signed the 2005 Independent Office or Loft Agreement with the Union and agrees to be

24

bound thereby, all the terms of this agreement shall apply, except that the provisions of this Article XII, paragraph 2, subsections (a) through (d) shall apply. However, these provisions shall not apply to Route Work.

(a) HOURS - Employees on the payroll on or before January 1, 1978, shall not have their scheduled hours reduced. Employees on the payroll on or before January 1, 1978, shall not have their scheduled hours increased by more than one (1) hour a day without the written consent of the Union. Where feasible, the additional hour shall be applied to the first part of the work schedule. The Employer shall give the Union three (3) weeks' written notice of any change of scheduled hours, except in the case of temporary changes. This provision shall not prevent the Employer from working employees overtime. Employees employed after January 1, 1978, shall work such hours as may be assigned by the Employer provided they are five (5) consecutive days a week, except for guards as defined in this Agreement.

(b) FLEXIBILITY - All new employees may be offered and assigned to any cleaning duty in the building, provided that it does not exceed a reasonable day's work.

Present office cleaning employees may be assigned to any cleaning duty on office floors provided (1) that the Employer give the Union three (3) weeks' written notice of any new assignments, except for temporary assignments, and (2) that the Employer shall not assign employees to workloads or work duties requiring unusual physical exertion, strength or dexterity. This provision shall not be applied by the Employer to substantially increase workloads or substantially alter duties so as to require any employee to perform more than a reasonable day's work.

If the Union grieves and/or arbitrates a dispute pursuant to this provision, the Employer in such arbitration shall have the burden of showing that only a reasonable day's work as provided above is required of the employee.

(c) SICK PAY -An employee absent from duty due to illness only on a scheduled workday immediately before and/or only on the scheduled workday immediately after a holiday shall not be eligible for sick pay for said absent workday or workdays.

(d) WORK OF ABSENTEES -Where through absenteeism there are insufficient employees to service the building, the Employer may: (a) request service employees in the building to work additional time over and above their work schedule; or (b) employ additional or extra employees to perform the work (Additional time over and above work scheduled shall not be mandatory unless the Employer cannot satisfactorily fill the work requirements from service employees in the building on a voluntary basis. In such event, work over and above the regular work schedule shall be in reverse order of seniority); or (c) request employees in the building to perform work of an absent employee, on a voluntary basis, during their regular working hours.

Employees in the building assigned to perform absentee work as described in subparagraph (c) hereof shall be paid straight-time pay, in addition to their regular daily pay, for each hour of work performed in the absent worker's section. Employees assigned to perform absentee work under subparagraph (c) hereof shall only be required to perform an amount of

25

work appropriate to the number of hours assigned, e.g., if an employee is assigned to work one hour in an absentee section which is normally cleaned in six (6) hours. The employee shall only be required to do one-sixth (1/6) of the normal work load in that section.

Employees performing absentee work under subparagraph (a), (b), or (c) above shall be given written instructions as to the work to be performed in absentee sections upon the request of the Union.

3. Section 2 above, shall not apply to "sole occupant" buildings as defined in Article I, Section 7B.

4. Employees cannot be transferred from one building to another building, or have their regular work assignments or stations changed, without the consent of the Union.

## ARTICLE XIII - General Clauses

1. **DIFFERENTIALS AND NO LOWERING OF STANDARDS** - Existing wage differentials among classes of workers within a building shall be maintained. It is recognized that wage differentials other than those herein required may now or hereafter arise or exist because of pay rates above the minimum required by this Agreement.

All employees enjoying higher wages, higher benefits or better working conditions than provided for herein, either pursuant to a prior collective bargaining agreement or otherwise, shall continue to enjoy at least the same. This Article shall not apply if the changes result from consolidations effectuated under the terms of this Agreement or to guards hired on or after January 25, 1978.

When an employee possesses considerable mechanical or technical skill and devotes more than seventy-five percent (75%) of his working time in the building to work involving such skill, his wage rate shall be determined by mutual agreement between the Employer and the Union. Such an employee shall receive a wage of not less than ten dollars ($10.00) per week above the contract minimum rate for a handyperson.

It is understood that licensed engineers covered under this Agreement shall constitute a separate bargaining unit and shall receive the same wages and benefits as paid to engineers under the Realty Advisory Board (RAB) Agreement covering licensed engineers in New York City except that pension, health, legal and training fund contributions shall continue to be paid under the terms of this Agreement.

If the Employer and the Union cannot agree upon the rate of pay of such employee, or in cases where an obvious inequity exists because of an employee's regular application of specialized abilities in his work, the amount or correctness of the differential may be determined by arbitration.

2. **PYRAMIDING** - There shall be no pyramiding of overtime pay, sick pay, holiday pay

26

or any other premium pay. If more than one of the aforesaid are applicable, compensation shall be computed on the basis giving the greatest amount.

   **3. HOLIDAYS** - The recognized contract holidays for employees under the Building Agreement:

## Holidays

| Holidays | 2005 | 2006 | 2007 |
|---|---|---|---|
| New Year's Day | December 31 (2004) – Friday | January 2 – Monday | January 1 – Monday |
| Washington's Birthday | February 21 – Monday | February 20 – Monday | February 19 – Monday |
| Good Friday | March 25 – Friday | April 14 – Friday | April 16 – Friday |
| Memorial Day | May 30 – Monday | May 29 – Monday | May 28 – Monday |
| Independence Day | July 4 – Monday | July 4 – Tuesday | July 4 – Wednesday |
| Labor Day | September 5 – Monday | September 4 – Monday | September 3 – Monday |
| Columbus Day | October 10 – Monday | October 9 – Monday | October 8 – Monday |
| Thanksgiving Day Thursday | November 24 – Thursday | November 23–Thursday | November 22 – |
| Day after Thanksgiving | November 25 – Friday | November 24 – Friday | November 23 – Friday |
| Christmas Day Tuesday | December 26 – Monday | December 25 – Monday | December 25 – |

| Floating Holidays: | 2005 | 2006 | 2007 |
|---|---|---|---|
| Martin Luther King | January 17 – Monday | January 16 – Monday | January 15 – Monday |
| Yom Kippur | October 13 – Thursday | October 2 – Monday | September 22 – |
| Monday | | | |
| Eid al-Fitr | November 3 – Thursday | October 24 – Tuesday | October 13 – Saturday |

   For employees performing Route Work, Lincoln's Birthday and Election Day shall be holidays in place of Good Friday and the day after Thanksgiving.

   There shall be one additional holiday in each contract year, which shall be Martin Luther King Day, Eid al-Fitr or Yom Kippur or a personal day at the option of the employee. The personal day shall be scheduled in accordance with paragraphs 3 and 4 below.

   For employees performing Building Work, where the major occupants are operating on Good Friday and/or the day after Thanksgiving, Lincoln's Birthday and/or Veterans Day may be substituted for such days provided notice is given to the Union on or before March 1st of each year.

27

For employees performing Route Work, the Employer shall have the option of substituting Good Friday and/or the day after Thanksgiving for Lincoln's Birthday and/or Election Day, provided notice is given to the Union on or before February 1 of each year.

The Employer shall post the holiday schedule on the bulletin board, and it shall remain posted throughout the year.

Washington's Birthday, Good Friday, Columbus Day and the day after Thanksgiving may be treated as personal days rather than fixed holidays for employees performing Building Work and Lincoln's Birthday, Washington's Birthday, Columbus Day and Election Day may be treated as personal days rather than fixed holidays for employees performing Route Work, under the following conditions:

(1) Prior to February 1 each year, each building may designate one or more such days as a personal day upon written notice to the Union and the employees. Failure to so designate shall be deemed agreement to leave such days as fixed holidays.

(2) Each building designating such days as personal days may, upon thirty (30) days' written notice to the Union and the employees, change such designation and make the day a fixed holiday. Employees who have received a personal day for such holiday shall be employed on such holiday at time and one-half.

(3) Employees entitled to personal days may select such day or days off on five (5) days' notice to the Employer provided such selection does not result in a reduction of employees in the building below seventy-five percent (75%) of the normal work staff. Such selection shall be made in accordance with seniority.

(4) Employees entitled to personal days who do not use such a day or days in a calendar year must use such day or days off during the first six months of the following year provided however, that the Employer inform in writing both the employee and the Union by January 31 of such succeeding year that such days are available and will be lost if not used prior to July 1 of that year.

It is understood and agreed that whatever holidays are negotiated between the Union and the RAB in the successor agreement to the 2005 Commercial Building Agreement shall apply from January 1, 2007, until the renewal of this Agreement.

Employees shall receive their regular, straight-time hourly rates for the normal day not worked, and, if required to work on a holiday, shall receive in addition to the pay above mentioned, premium pay at the rate of time and one-half their regular, straight-time hourly rate of pay for each hour worked, with a minimum of four (4) hours premium pay. Any employee who is required to work on a holiday beyond eight (8) hours shall continue to receive the compensation above provided for holiday work, namely, pay at the regular straight- time rate plus premium pay at time and one-half the regular, straight-time rate.

28

Any regular, full-time employee ill in any payroll week in which a holiday falls shall receive holiday pay or one day off if he worked at least one day during said payroll week.

Any regular employee whose regular day off, or one of whose regular days off, falls on a contract holiday, shall receive an additional day's pay therefor, or, at the option of the Employer, shall receive an extra day off with pay within a period of ten (10) days prior to or ten (10) days after said regular day off, provided that said extra day off is granted in conjunction with the employee's two regular days off so that the employee receives a minimum of three consecutive days off. If the employee receives the extra day off before the holiday and his employment is terminated for any reason, he need not compensate the Employer for that day.

A holiday shall be considered as a day worked for the purpose of computing overtime pay.

### 4. VOTING TIME - Any employee who is required to work on Election Day and gives legal notice shall be allowed two (2) hours off, such hours to be designated by the Employer, while the polls are open.

### 5. PERSONAL DAY- All employees shall receive a personal day in each contract year. This personal day is in addition to the holidays listed in paragraph 3 above. The personal day shall be scheduled in accordance with the following provision:

Employees may select such day off on five (5) days notice to the Employer provided such selection does not result in a reduction of employees in the building below 75% of the normal work staff. Such selection shall be made in accordance with seniority.

### 6. WORK OF ABSENTEES -

(a) In the event an employee is absent from work, the employee's specific assignment for a day shall be reassigned to another employee or employees, and such assignment shall be worked and paid for on the basis of the same hours and pay of the original assignment. The above language is interpreted as follows:

The Employer must pay for the full amount of hours that were regularly scheduled for the section or space where an employee is absent. If the schedule is six hours for the space, six employees must be employed within their own regular schedule and get one hour each. If four such employees be employed, the four must be employed within their own regular schedule and get 1 1/2 hours each. If three such employees are employed, the three must be employed within their own regular schedule and get two hours each. If two such employees are employed, the two must be employed within their own regular schedule and get three hours each. This formula will apply on a pro rata basis if the space is seven hours, five hours, four hours, and so on, so that the Employer pays no more or no less for the work schedule of the absent employee.

29

(b) Extra time is to be rotated so that every employee who wishes to work on extras will get the proper amount due such employee.

(c) If during the rotation schedule, for any reason an employee refuses to work on extras, such employee must go to the bottom of the rotation list. If the employee continues to refuse to work on extras, such employee can be, on due notice from the Shop Steward or the Union, taken off the rotation schedule.

## 7. WORK SCHEDULES AND WORKLOADS - (a) If the Union initiates a grievance under this Agreement relating to a work schedule and requests the Employer to furnish a work schedule, the Employer must promptly furnish to the Union said work schedule in writing for all its employees. This work schedule shall include, but not be limited to, setting forth the number of work hours of each employee, the square footage within each employee's area, the type and quality of work, and frequency of performance of duties required for each employee.

(b) 1. The Employer shall not impose an unduly burdensome workload on any employee covered by this Agreement. The Union shall have the right to grieve and arbitrate any workload complaints. If the Arbitrator finds that the challenged workload is unduly burdensome, the Arbitrator shall order a reduction in such workload and other remedies the Arbitrator deems appropriate.

2. The Employer shall not, in any building in which it currently cleans or which it acquires in the future, impose a productivity level on office cleaners which exceeds an average of four thousand (4,000) square feet per hour.

Average square feet per hour shall be computed by dividing the total number of man-hours per day into the total cleanable square feet of the building.

This provision is intended to establish maximum productivity rates and is not to be construed as permitting the increase in productivity rates in buildings where productivity rates are below the maximum established herein.

3. In the event an Employer violates this Article, it shall be required to reduce productivity rates to conform to the maximum permitted hereunder and pay to each employee it employs in the building an amount equal to his or her wages multiplied by the percentage that the average productivity rate exceeds the maximum for the total period of such violation.

4. In the event an Employer feels that there are extenuating circumstances in a building which would justify exceeding the maximum productivity rate, it may request the President of Union to waive the maximum productivity rate in such building(s). The President of the Union may in his sole and complete discretion grant or deny such request. His decision shall not be subject to grievance or arbitration. No such request shall be deemed granted unless it is in writing and signed by the President of the Union.

## 8. SCHEDULES/RELIEF PERIODS - Overtime, Saturday, Sunday and holiday work shall be evenly distributed so far as compatible with efficient operation of the building, except

30

where Saturday or Sunday is a regular part of the workweek. Preference for Saturday and Sunday work shall be given to the regular, full-time employees.

It is recognized by the Employer that the present practice with respect to rest periods for employees shall continue.

**9. RELIEF EMPLOYEES** - Relief or part-time employees shall be paid the same hourly rate as provided for full time employees in the same occupational classification.

**10. METHOD OF PAYMENT OF WAGES** - All wages, including overtime, shall be paid weekly in cash or by check with an itemized statement of payroll deductions. If a regular payday falls on a holiday, employees shall be paid on the preceding day.

All of the payroll books kept by the Employer must show the number of hours of straight time per day, the number of hours of overtime per day, and the hourly rate of pay.

The Employer may require, at no cost to the employee, than an employee's check be electronically deposited at the employee's designated bank. The Union shall be notified by the Employer of this arrangement.

In the event an Employer's check to an employee for wages is returned due to insufficient funds on a *bona fide* basis twice within a year's period, the Employer shall be required to pay all employees by cash or certified check.

Pay envelopes shall contain entries showing the number of straight-time hours, the number of overtime hours, all deductions and net pay.

Employees paid by check who work during regular banking hours shall be given reasonable time to cash their checks exclusive of their break and lunch period. The Employer shall make suitable arrangements at a convenient bank for such check cashing.

The Union and the RAB have agreed to establish a committee to study the possibility of permitting bi-weekly payment of wages at the discretion of the Employer, and subject to applicable law. It is understood and agreed that any decisions or agreement concluded between the Union and the RAB shall become binding upon the parties hereto upon the same terms and effective dates.

**11. SENIORITY AND LAYOFF** - In the event of layoff due to reduction of force, the inverse order of department or job classification seniority shall be followed, except as provided in Termination Pay, Article XIII, Section 26, with due consideration for efficiency and special needs of a department.

Except as provided hereafter, an employee laid off as a result of reduction in force in a building may bump the employee in the company with the least seniority among employees covered by the respective Building or Route Agreement.

31

However, an employee hired as a temporary who works less than five months may be laid off if such temporary employee is the junior employee in the building. In no event shall the temporary employee have the right to bump another employee from another building.

Continuity of employment for all purposes, including, but not limited to, vacation, sick pay, Service Center visits and termination pay, shall not be broken unless the employee severs his employment at the building and with the Employer simultaneously.

Seniority of an employee shall be based upon total length of service with the Employer or in the building, whichever is greater, except as provided in General Clause 17 (Vacations).

Nothing contained in this section shall be construed in such a manner as to permit an employee to bump a less senior employee working for another Employer in the same building.

The seniority date for all positions under the Agreement shall be the date the employee commenced working in the building for the Employer, building agent and/or owner, regardless of whether there was a collective bargaining agreement and regardless of the type of work performed by the employee.

## 12. REPLACEMENTS, PROMOTIONS, VACANCIES, TRIAL PERIOD AND NEWLY HIRED EMPLOYEES - (a) In filling vacancies or newly created positions in the bargaining unit, preference shall be given to those employees already employed in the building, based upon the employee's seniority, but training, ability and appearance, where required, shall also be considered. For the purpose of this provision, employees already employed in the building shall be deemed to include guards.

Nothing contained in this section shall be construed in such a manner as to entitle an employee to fill a vacancy or newly created position with another Employer in the same building.

Anyone employed as an extra or contingent with substantial regularity for a period of four (4) months or more shall receive preference for steady employment.

Floaters will be given preference in respect to the filling of permanent jobs in one location.

If a present employee cannot fill the job vacancy, the Employer must fill the vacancy in accordance with the other terms of this Collective Bargaining Agreement.

In the event that a new classification is created in a building, the Employer shall negotiate with the Union a wage rate for that classification.

There shall be a trial period for all newly hired employees of sixty (60) calendar days.

(b) Effective on or after February 4, 1996, a new hire employed in the guard or "other"

32

category shall be paid a starting rate of eighty percent (80%) of the minimum regular hourly wage rate, and that notwithstanding Article X Section B, the rates for the thirty month new hire period shall reflect annual increases of 80% of the annual increase.

Upon completion of thirty (30) months of employment, the new hire shall be paid the full minimum wage rate.

This provision shall not apply to any experienced employee ("Experienced Employee") who was employed in the New York City Building Service Industry ("Industry") as of February 3, 1996. Experienced employee shall be defined as a person who has worked in the Industry for a period of at least thirty (30) days within the twenty-four (24) months immediately preceding hiring (excluding employment as a vacation relief).

No experienced employee may be terminated or denied employment for the purpose of discrimination on the basis of his/her compensation and/or benefits.

The Union may grieve such discrimination in accordance with the grievance and arbitration provisions of the Agreement (Articles V and VI).

If the Arbitrator determines an experienced employee has been terminated or denied employment because of such discrimination, the Arbitrator shall:

(1) In case of termination- Reinstate the experienced employee with full pay and all benefits retroactive to the date of the experienced employee's discharge.

(2) In case of failure to hire - If the Arbitrator determines that an experienced employee was not given preference for employment absent good cause, he or she shall direct the Employer to hire the experienced employee with full back pay and benefits retroactive to the date of denial of hire.

No contributions shall be made to the Building Service Pension Fund or to the SRSP on behalf of a new hire, until the new hire has completed two (2) years of employment. Contributions shall be made for an experienced employee in accordance with the other provisions of this Agreement.

13. **RECALL** - Any employee who has been employed for one (1) year or more by the same Employer or in the same building and who is laid off shall have the right of recall, provided that the period of layoff of such employee does not exceed six (6) months. Recall shall be in the reverse order of the laid-off employees' departmental or job classification seniority (i.e., the most recently terminated employee in that department shall have the first right of recall). Recall rights apply to all vacant permanent positions and temporary positions if it is expected that the temporary position will last for a period of at least sixty (60) days.

The Employer shall notify by certified mail, return receipt requested, the last qualified laid-off employee, at his last known address, of any job vacancy, and a copy of this notice shall be sent to the Union. The employee shall then be given seven (7) days from the date of mailing

33

of the letter in which to express in person or by registered or certified mail his desire to accept the available job. In the event any employee does not accept recall, successive notice shall be sent to qualified employees until the list of qualified employees is exhausted. Upon re-employment, full seniority status, less period of layoff, shall be credited to the employee. Any employee who received termination pay and is subsequently rehired shall retain said termination pay and for purpose of future termination pay shall receive the difference between what he has received and what he is entitled to if subsequently terminated at a future date. Any vacation monies paid shall be credited to the Employer against the current vacation entitlement.

Further, in the event an Employer has a job vacancy in a building where there are no qualified employees on layoff status, the Employer shall use its best efforts to fill the job vacancy from qualified employees of the Employer or agent who are on layoff status from other buildings.

## 14. SENIORITY AND VACATIONS IN RELATION TO SICKNESS AND ACCIDENT ABSENCE - (1) Employees who meet with accidents or become ill shall be re-employed by the Employer by whom he or she was employed at the time of such accident or illness on the same job, or if the same job no longer exists, on a comparable job if and when such employee is in physical condition to resume his or her work, and his or her ability to work shall be determined by the certificate of a duly licensed physician. However, no employee shall be required to produce a physician's certificate unless absent for more than seven (7) working days. The employee shall, in such circumstances, when absent for more than four (4) working days, give the Employer twenty-four (24) hours' notice of his or her intention to return to work. In the event that the Employer challenges the validity or the content of the physician's certificate, the employee shall be returned to his or her job but will be required to submit within twenty-four (24) hours to an examination by an impartial physician approved and paid for by the parties. The certificate of the impartial physician shall determine the issue of ability to resume work. The provisions of this paragraph shall survive the expiration of this contract.

(2) Such employees are to return to their job with full seniority and full vacation credits provided, however, that there shall be no duplication of vacation payments made both to the employee returning to the job and his or her replacement other than in cases where an employee, could be entitled to Workers' Compensation notwithstanding the fact that the employee has not collected Workers' Compensation. In the above mentioned cases where an employee would be entitled to Workers' Compensation, the full vacation payment shall be made to the injured employee, provided that the injured employee shall collect only one vacation payment during his or her absence from work. In the event that the employee returns to work before September 16th in a succeeding calendar year to the year in which he or she was injured, the employee shall receive his or her full vacation benefits for the year he or she returns to work.

(3) If a sick or disabled employee is out for less than three (3) months in the September 16th to September 15th period, then full vacation credits for that period shall be paid to the sick or disabled employee. If the sick or disabled employee (other than pregnancy leaves and/or in the above mentioned cases where an employee would be entitled to Workers' Compensation) is out for more than three (3) months in the September 16th to September 15th period, then said

34

employee shall receive accrued vacation benefits, computed on his or her length of service and time on the job, during the September 16th to September 15th period, with no deduction in vacation benefits for the first three (3) months of absence.

### 15. LEAVE OF ABSENCE - (1) All employees employed by the Employer for five (5) years or more shall be granted a leave of absence for a period of one hundred twenty (120) days a year, including vacation time, at intervals of three (3) years, without loss of employment, seniority and/or vacation accruals. If a holiday should occur during the above mentioned vacation, the employee shall receive a normal day's pay for said holiday, but the period of leave of absence shall be reduced by one day for each holiday occurring during said vacation period.

(2) The above mentioned employees shall have the right to a leave of absence at a time other than the vacation period if an emergency exists (emergency being defined for the purpose of this General Clause as a death or a serious illness in the employee's family) for a period of one hundred twenty (120) calendar days, exclusive of vacation time, at intervals of three (3) years, without loss of employment, seniority and/or vacation accruals. If a holiday should occur during the above mentioned vacation, the employee shall receive a normal day's pay for said holiday, but the period of leave of absence shall be reduced by one day for each holiday occurring during said vacation period.

(3) The rights of the employees under this Clause shall in no way limit the employee's rights under General Clause 36 and the limitation of said General Clause 36 with respect to "family" shall not be applicable to this Clause. If an employee exercises his or her rights under said Clause 36, simultaneously with receiving a Leave of Absence under this Clause, the total period of absence from work shall in no event exceed one hundred twenty (120) days.

(4) Notice shall be given the Employer of the employee's request for a leave of absence in the following manner:

(a) If leave of absence is to be taken at the same time as the employee's vacation, by ten (10) days' written notice to the Employer from the Union, or ten (10) days' written notice by certified mail from the employee to the Employer and the Union.

(b) If the leave of absence is to be taken upon the occurrence of an emergency, as above defined, the notice shall be rendered in the same manner as (a) above, except that the period of notice shall be four (4) days rather than ten (10) days.

(5) (a) The maximum number of employees entitled to a leave of absence in a given year shall not exceed forty percent (40%) of the total number of employees on a particular job and shall be granted in accordance with shop seniority primarily and job seniority secondarily.

If a particular job is manned by one employee, said employee will be entitled to the leave of absence.

If a particular job is manned by two employees, only one employee may receive the leave of absence at a time.

Received   07-06-2006   12:12pm   From-6108349720               To-SEIU LOCAL 32BJ          Page 036

(b) Employees who are not entitled to welfare and pension benefits will not be considered in computing the above mentioned forty percent (40%). Notwithstanding this provision, these employees are otherwise eligible for the leave of absence.

(6) (a) The employee shall receive service credits for the full period of leave of absence for vacation, seniority and all other time purposes under the Agreement.

(b) There shall be no contributions made by the Employer to the Pension Fund for the period of a leave of absence with respect to employees taking such leaves. However, if such employees are replaced during the leave of absence or any part thereof, the Employer shall make contributions to the Pension Fund for such replacements during the period of such replacements. If there is no replacement, there shall be no contribution by the Employer to the Pension Fund during such leave for the employee on leave of absence unless the Employer allocates the work of those on leave to other employees, thus increasing their customary working assignment, in which event the Employer shall pay into the Pension Fund for the number of excess hours times $1.094 up to a maximum for such excess of $43.75 per week in each individual case.

Effective January 1, 2006, such Employer payment to the Pension Fund shall be the number of excess hours times $1.244 up to a maximum for such excess of $49.75 per week in each individual case.

Effective January 1, 2007, such Employer payment to the Pension Fund shall be the number of excess hours times $1.469 up to a maximum for such excess of $58.75 per week in each individual case.

(7) Any employee requesting a personal leave of absence shall be covered for health benefits during the period of the leave provided the employee requests health coverage while on leave of absence and pays the Employer in advance for the cost of same.

Any employee on leave due to Workers' Compensation or disability shall continue to be covered for health benefits without the necessity of payment to the Employer in accordance with Article IX, Paragraph A.

(8) Employees on Leave of Absence as provided for herein shall not be entitled to claim New York State Unemployment Insurance for the period of said leave.

(9) Any Employer who is required by law to comply with the provisions of the Family and Medical Leave Act (FMLA) shall comply with the requirements of said act.

16. **PREGNANCY LEAVE** - Pregnancy shall be treated as any other disability suffered by an employee in accordance with applicable law.

36

## 17. VACATIONS - (a) Every employee employed with substantial continuity in any building or by the same Employer shall receive each year a vacation with pay as follows:

Employees who have worked 6 months.......................3 working days
Employees who have worked 1 year.............................2 weeks
Employees who have worked 5 years..........................3 weeks
Employees who have worked 15 years.......................4 weeks
Employees who have worked 21 years..................... 21 working days
Employees who have worked 22 years...................... 22 working days
Employees who have worked 23 years....................... 23 working days
Employees who have worked 24 years...................... 23 working days
Employees who have worked 25 years..................... 24 working days
.................................................... 5 weeks

Length of employment for vacation shall be based upon the amount of vacation that an employee would be entitled to on September 15th of the year in which the vacation is given, subject to negotiation and arbitration where the result is unreasonable.

Part-time employees regularly employed shall receive proportionate vacation allowances based on the average number of hours per week they are employed.

Firemen who have worked substantially one (1) firing season in the same building or for the same Employer, when laid off, shall be paid at least three (3) days' wages in lieu of vacation.

Firemen who have been employed more than one (1) full firing season in the same building or by the same Employer shall be considered full-time employees in computing vacations.

Regular days off and holidays falling during the vacation period shall not be counted as vacation days. If a holiday falls during the employee's vacation period, he shall receive an additional day's pay therefor, or, at the Employer's option, an extra day off within ten (10) days immediately preceding or succeeding his vacation.

Vacation wages shall be paid prior to the vacation period by the Employer on the job at the time unless otherwise requested by the employee, who is entitled to actual vacation and cannot instead be required to accept money. However, if the Employer on the job when the money is due is not in contractual relations with the Union, the last Employer with whom the Union had a contract will be responsible for vacation pay.

Any Employer who fails to pay in accordance with this provision where the vacation has been regularly scheduled shall pay an additional two (2) days for each vacation week due at that time.

Employees regularly working overtime or on premium days or required to work during their early relief time shall not suffer any reduction in wages while being paid or scheduled for vacation time.

When compatible with proper operation of the facility, choice of vacation periods shall be according to seniority and confined to the period beginning April 1st and ending September 15th of each year. These days may be changed, and the third vacation week taken at a separate time, by mutual agreement of the Employer and the employee.

The fourth and fifth week of vacation may, at the Employer's option, be scheduled upon two (2) weeks' notice to the employee for a week or two weeks (which may not be split) other than the period when he takes the rest of his vacation.

Any employee leaving his job for any reason shall be entitled to vacation accrual allowance, computed on his length of service as provided in the vacation schedule based on the elapsed period from the previous September 16th (or from the date of his employment if later employed) to the date of his leaving. Any employee who has received a vacation during the previous vacation period (April 1st through September 15th ) and who leaves his job during the next vacation period shall be entitled to full vacation accrual allowance instead of on the basis of the elapsed period from the previous September 16th.

No employee leaving his position voluntarily shall be entitled to accrued vacation pay unless he gives five (5) working days' termination notice. Any employee who has received no vacation and has worked at least six (6) months before leaving his job shall be entitled to vacation accrual allowance equal to the vacation allowance provided above.

Any Employer assuming this Agreement shall be responsible for payment of vacation pay and granting of vacations required under this Agreement which may have accrued prior to the Employer taking over the job, less any amounts paid or given for that vacation year.

In the event that the successor Employer has reason to believe that the predecessor intentionally delayed vacations in order to avoid the obligation to make vacation payments under this Agreement, the successor must still make vacation payments to employees, but may pursue a claim against the predecessor Employer pursuant to the arbitration provision of this agreement in order to seek recovery for payments made. In the event that the Employer terminates its Employer-employee relationship under this Agreement and the successor Employer does not have an Agreement with the Union providing for at least the same vacation benefits, the Employer shall be responsible for all accrued vacation benefits.

(b) A person hired solely for the purpose of relieving employees for vacation shall be paid sixty percent (60%) of the minimum applicable regular hourly wage rate. Should a vacation relief employee continue to be employed beyond five months, such employee shall be paid the wage rate of a new hire or experienced person, as the case may be. If a vacation replacement is hired for a permanent position immediately after working as a vacation replacement, such employee shall be credited with time worked as a vacation replacement toward completion of the thirty-month period required to achieve the full rate of pay under the "New Hires" provision.

In the event that the Arbitrator finds that an Employer is using this rate as a subterfuge, such Arbitrator may, among other remedies, award full pay from the date of employment at the applicable hiring rate.

No contributions to any Benefit Funds shall be made for a vacation relief person.

### 18. VACATION REPLACEMENTS -

(1) With respect to vacation replacements, the Employer, at his discretion, may elect to cover the space of the employee on vacation with less than the regular scheduled working hours. In this event, the employee on vacation shall receive, upon his or her return, either 7 1/2 hours additional pay (1 1/2 hours per day for the next five succeeding days without being compelled to work beyond his or her regular shift hours) or two extra days' vacation. This extra compensation or vacation is for the purpose of assuring the space is in proper and good condition.

(2) This extra compensation or vacation shall apply only to those employees whose length of service entitles them to nine (9) or more days' vacation and only when the regular area has been cleaned in less than the regularly scheduled hours.

(3) The conditions set forth in the preceding paragraph shall not be used for the purpose of effecting a speedup or be deemed for the purpose of downgrading cleaning services.

### 19. DAY OF REST - Each employee shall receive at least one (1) full day of rest in every seven (7) days.

### 20. UNIFORMS AND OTHER APPAREL - (1) On all jobs with three or more employees, the Employer shall supply and maintain uniforms for such employees. The Employer shall also supply and maintain uniforms for all employees classified as matrons.

(2) On all jobs where the Employer has been supplying and maintaining uniforms for such employees, the Employer will continue to supply and maintain uniforms for such employees.

(3) All uniforms must be laundered at least once a week.

(4) All uniforms must be maintained in a good and serviceable condition by the Employer at all times.

(5) Employees doing outside work shall be furnished adequate wearing apparel for the purpose.

(6) All uniforms shall be appropriate for the season.

### 21. FIRST AID KIT - An adequate and complete first aid kit shall be supplied and maintained by the Employer in a place readily available to all employees.

Received   07-08-2006   12:12pm   From-6108949720          To-SEIU LOCAL 32BJ          Page 040

**22. LOSS OF EMPLOYEES' PROPERTY** - Employees shall be reimbursed for loss of personal property caused by fire or flood in the building.

**23. EYEGLASSES AND UNION INSIGNIA** - Employees may wear eyeglasses and the Union insignia while on duty.

**24. BULLETIN BOARD** - A bulletin board shall be furnished by the Employer exclusively for union announcements and notices of meetings.

**25. SANITARY ARRANGEMENTS** - Adequate sanitary arrangements shall be maintained in every building, and individual locker and key thereto and rest room key, where rest room is provided, and soap, towels and washing facilities shall be furnished by the Employer for all employees. The rest room and locker room shall be for the exclusive use of employees servicing and maintaining the building.

**26. TERMINATION PAY** - (a) In case of termination of employment because of the employee's physical or mental inability to perform his duties or from reduction in force occurring for reasons other than technological advances, including conversion of elevators to automatic operation, the employee shall receive, in addition to accrued vacation, termination pay according to service in the building or with the Employer as follows:

| Employee with: | Pay: |
|---|---|
| 5 and less than 10 years | 1 week's wages |
| 10 and less than 12 years | 2 weeks' wages |
| 12 and less than 15 years | 3 weeks' wages |
| 15 and less than 17 years | 6 weeks' wages |
| 17 and less than 20 years | 7 weeks' wages |
| 20 and less than 25 years | 8 weeks' wages |
| 25 years or more | 10 weeks' wages |

An employee physically or mentally unable to perform his duties may resign and receive the above termination pay if he submits written certification from a physician of such inability at the time of termination. In such event, the Employer may require the employee to submit to a medical examination by a physician designated by the Employer at the expense of the Employer to determine if in fact the employee is physically or mentally unable to perform his duties. If the Employer's designated physician disagrees with the certification submitted by the employee, the employee shall be examined by a physician designated by the Medical Director of the Building Service 32BJ Health Fund to make a final and binding determination whether the employee is physically or mentally unable to perform his duties.

(b) In case of termination of employment because of technological advances, including conversion of elevators to automatic operation, the employee shall receive, in addition to any accrued vacation, termination pay according to years of service in the building or with the Employer as follows:

**Employee with:**      **Pay:**

| | |
|---|---|
| 5 and less than 10 years | 2 weeks' wages |
| 10 and less than 12 years | 4 weeks' wages |
| 12 and less than 15 years | 5 weeks' wages |
| 15 and less than 17 years | 7 weeks' wages |
| 17 and less than 20 years | 8 weeks' wages |
| 20 and less than 22 years | 9 weeks' wages |
| 22 and less than 25 | 10 weeks' wages |
| 25 years or more | 11 weeks' wages |

(c) The right to accept termination pay and resign where there has been a reduction in force shall be determined by seniority, i.e., termination pay shall be offered to the most senior employee, then to the next most senior, and so on until accepted. If no employee accepts the offer, the least senior employee or employees of the Employer based upon company wide seniority shall be terminated and shall receive applicable termination pay.

(d) "Week's pay" in the above paragraph means the regular, straight-time weekly pay at the time of termination. If the Employer offers part-time employment to the employee entitled to termination pay, he shall be entitled to termination pay for the period of his full time employment, and if he accepts termination pay, he shall be considered a new employee for seniority purposes.

(e) Any employee accepting termination pay who is rehired in the same facility or with the same Employer shall be considered a new employee for all purposes, except as provided in the recall clause.

(f) For the purpose of this section, sale or transfer of a building shall not be considered a termination of employment so long as the employee or employees are hired by the purchaser or transferee, in which case they shall retain their building seniority for all purposes.

(g) The obligation to pay termination pay hereunder shall be borne by the last Employer with whom an employee entitled to termination pay was employed.

## 27. TOOLS, PERMITS, FINES, AND LEGAL ASSISTANCE - All tools, of which the Superintendent shall keep an accurate inventory, shall be supplied by the Employer. The Employer shall continue to maintain and replace any special tools or tools damaged during ordinary performance of work but shall not be obligated to replace "regular" tools if lost or stolen. The Employer shall bear the expense of securing or renewing permits, licenses or certificates for specific equipment located on the Employer's premises, and will pay fines and employees' applicable wages for required time spent for the violation of any codes, ordinances, administrative regulations or statutes, except any resulting from the employees' gross negligence or willful disobedience.

The Employer shall supply legal assistance where required to employees who are served with summonses regarding building violations.

41

28. **DAMAGE OR BREAKAGE** - It is agreed that employees shall not be held liable for any damage or breakage occasioned by them in the course of their employment or for damage or loss of equipment.

29. **MILITARY SERVICE** - All statutes and valid regulations about reinstatement and employment of veterans shall be observed.

30. **NO DISCRIMINATION** - There shall be no discrimination against any present or future employee by reason of race, creed, color, age, disability, national origin, sex, sexual orientation, union membership, or any characteristic protected by law, including, but not limited to, claims made pursuant to Title VII of the Civil Rights Act, the Americans with Disabilities Act, the Age Discrimination in Employment Act, the New York State Human Rights Law, the New York City Human Rights Code, or any other similar laws, rules or regulations. All such claims shall be subject to the grievance and arbitration procedure (Articles V and VI) as the sole and exclusive remedy for violations. Arbitrators shall apply appropriate law in rendering decisions based upon claims of discrimination.

31. **PLACEMENT/EMPLOYMENT AGENCY FEE** - No employee shall be employed through a fee-charging agency unless the Employer pays the full fee.

There is presently an agreement between the Union and RAB which provides that the Union may establish a Hiring Hall. In that event, the Employer agrees that if he shall require employees in the classifications of employment covered by this Agreement, he shall hire such employees from a Hiring Hall operated by the Union. The Hiring Hall shall refer only qualified applicants on the basis of their industry wide seniority. In the event the Hiring Hall is unable to supply satisfactory applicants to the Employer within three (3) working days following the request, the Employer shall be free to hire on the open market. The facilities of the Hiring Hall operated by the Union shall be made available to both members and non-members of the Union. The Union warrants that in the operation of said Hiring Hall and in referrals to the Employer, it will not discriminate against any individual applicant for employment.

32. **EMPLOYEES' ROOMS** - Any employee occupying a room or apartment on the Employer's property may be charged a reasonable rental therefor unless such occupancy is a condition of his employment in which case no rent shall be charged. Any such employee shall receive thirty (30) days' notice of discharge, except where there is a discharge for a serious breach of employment contract.

33. **DEFINITIONS** -
*Elevator Starter* - Chief responsibility is to direct elevator operations and traffic in the building and does not normally operate an elevator.

*Handyperson* - Possesses a certain amount of mechanical or technical skill and devotes more than fifty percent (50%) of working time in a building to work involving such skill.

*Foreperson* - Differs from a porter or cleaning person in that the main responsibility is to direct cleaning operations.

*Guard* - An employee whose function is to enforce rules to protect the property of the Employer or to protect the safety of persons on the Employer's premises and whose duties shall not include the work performed under any other job classification covered in this Agreement.

*Others* - Includes elevator operators, porters, fire safety directors and all other service employees in the building under the jurisdiction of the Union except those classifications specified above.

A "regular, full-time employee," unless otherwise specified, shall be defined as one who is regularly scheduled to work five days per week.

All references to the male gender shall be deemed to include the female gender.

## 34. REQUIRED TRAINING PROGRAMS - The Employer shall compensate any employee now employed in a building for any time required for the employee to attend any instruction or training program in connection with the securing of any license, permit or certificate required by the Employer for the performance of duties in the building. Time spent shall be considered as time worked for the purpose of computing overtime pay.

## 35. GARNISHMENTS - No employee shall be discharged or laid off because of the service of an income execution, unless in accordance with applicable law.

## 36. DEATH IN THE FAMILY - A regular, full-time employee with at least one (1) year of employment in the building shall not be required to work for a maximum of three (3) days immediately following the death of his parent, brother, sister, spouse or child, and shall be paid his regular, straight-time wages for any of such three days on which he was regularly scheduled to work or entitled to holiday pay.

With respect to grandparents, the Employer shall grant a paid day off on the day of the funeral if such day is a regularly scheduled workday.

## 37. UNION VISITATION - Union representatives shall, at all times, be permitted to confer with the employees in the service of the Employer.

## 38. JURY DUTY - Employees who are required to qualify or serve on juries shall receive the difference between their regular rate of pay and the amount they receive for qualifying or serving on said jury with a maximum of three (3) weeks in any calendar year.

Pending receipt of the jury duty pay, the Employer shall pay the employee his regular pay on his scheduled payday. As soon as the employee receives the jury duty pay, he shall reimburse his Employer by signing the jury paycheck over to the Employer.

Employees who serve on a jury shall not be required to work any shift during such day. If an employee is a weekend employee and assigned to jury duty he shall not be required to work the weekend.

43

In order to receive jury duty pay, the employee must notify the Employer at least two (2) weeks before he is scheduled to serve. If less notice is given by the employee, the notice provision regarding change in shift shall not apply.

### 39. IDENTIFICATION - Employees may be required to carry with them and exhibit proof of employment on the premises.

### 40. SERVICE CENTER VISIT - Every regular, full-time employee who has been employed in the building for one (1) year or more shall be entitled, upon one (1) week's notice to his Employer, to take one (1) day off in each calendar year at straight-time pay to visit the office of any one of the benefit funds for the purpose of conducting business at the benefit fund office.

Such employee shall receive an additional one (1) day off with pay to visit the benefit fund office if the office requires such a visit. To receive payment for such days, the employee shall exhibit a signed statement from the benefit fund office.

In the event that an employee chooses to visit any one of the benefit fund offices after having used up his entitlement pursuant to the above three paragraphs, he may use any of his sick days for that purpose.

### 41. DEATH OF EMPLOYEE - If an employee dies after becoming entitled to, but before receiving, any wage or pay hereunder, it shall be paid to his estate, or pursuant to Section 1310 of the New York Surrogate's Court Procedure Act, unless otherwise provided herein. This shall not apply to any benefits where the rules and regulations of the Health, Pension, Legal, Training and SRSF Funds govern.

### 42. GOVERNMENTAL DECREE - If because of legislation, governmental decree or order, any increase or benefit is in any way blocked, frustrated, impeded or diminished, the Union may upon ten (10) days' notice require negotiation with the RAB to take such measures and reach such revisions in the contract as may legally provide substitute benefits and improvements for the employees at no greater cost to the Employer.

In the event that any provision of this contract requires approval of any governmental agency, the Employer shall cooperate with the Union with respect thereto.

### 43. WEATHER CONDITIONS - Where extreme cold or hot weather causes hardship to the employees in the performance of their normal duties, the Union has the right to request the Employer to revise work schedules so as to give employees such advantage of retained heat or cold as may be compatible with the efficient operation of the building.

### 44. DISABILITY BENEFITS LAW/UNEMPLOYMENT INSURANCE LAW -
(1) The Employer shall cover its employees so that they shall receive maximum weekly cash benefits provided under the New York State Disability Benefits Law on a noncontributory basis, and also under the New York State Unemployment Insurance Law, whether or not such coverages are mandatory.

44

(2) Failure to so cover employees makes the Employer liable to an employee for all loss of benefits and insurance.

(3) The Employer will cooperate with employees in processing their claims and shall supply all necessary forms, properly addressed and shall post adequate notice of places for filing claims.

(4) If the employee informs the Employer he is requesting Workers' Compensation benefits, then no sick leave shall be paid to such employee unless he specifically requests in writing payment of such leave. If an employee informs the Employer he is requesting disability benefits, then only five days' sick leave shall be paid to such employee (if he has that amount unused) unless he specifically requests in writing payment of additional available sick leave.

(5) Any employee required to attend his Workers' Compensation hearing shall be paid for his regularly scheduled hours during such attendance.

(6) Any cost incurred by the Union to enforce the provision of this Article shall be borne by the Employer.

(7) The Parties agree to establish a committee under the auspices of the Building Service 32BJ Health Fund to investigate and report on the feasibility of self-insuring disability and unemployment benefits.

## 45. SICKNESS BENEFITS - (1) Any regular employee with at least one (1) year of service (as defined in Section 3 below) in the facility or with the same Employer shall receive in a calendar year from the Employer ten (10) paid sick days for bona fide illness.

Any employee entitled to sickness benefits shall be allowed four (4) single days of paid sick leave per year taken in single days. The remaining six (6) days of paid sick leave may be paid either for illnesses of more than one (1) day's duration or may be counted as unused sick leave days.

The employee shall receive the above sick pay whether or not such illness is covered by New York State Disability Benefits and/or Workers' Compensation Benefits; however, there shall be no pyramiding or duplication of Disability Benefits and/or Workers' Compensation with sick pay.

(2) Employees who have continued employment to the end of the calendar year and have not used all sickness benefits shall be paid in the succeeding January one full day's pay for each unused sick day.

Any employee who has a perfect attendance record for the calendar year shall receive an attendance bonus of $125.00 in addition to payment of the unused sick days.

For the purpose of that provision, perfect attendance shall mean that the employee has not used any sick days, except that any sick day or unpaid leave that qualifies under the Family and Medical Leave Act shall not be considered in determining perfect attendance.

If an Employer fails to pay an employee before the end of February, then such Employer shall pay one additional day's pay unless the Employer challenges the entitlement or amount due.

The Employer at the end of the calendar year (December 31) shall be responsible for paying all unused sick pay.

(3) For the purpose of this Article, one (1) year's employment shall be reached on the anniversary date of employment.

Employees who complete one (1) year of service after January shall receive a pro rata share of sickness benefits for the balance of the calendar year.

A "regular" employee shall be defined as one who is a full or part-time employee on a regular schedule. Those employed less than forty (40) hours a week on a regular basis shall receive a pro rata portion of sickness benefits provided herein computed on a forty (40) hour workweek.

(4) All payments set forth in this Article are voluntarily assumed by the Employer, in consideration of concessions made by the Union with respect to various other provisions of this agreement, and any such payment shall be deemed to be a voluntary contribution or aid within the meaning of any applicable statutory provisions.

**46. AUDITING** - Where an Employer has received written notice from the Union that he is delinquent with respect to either wage payments, welfare payments, pension payments, SRSF payments or dues, initiation fees, or other monies, that Employer is to be given thirty (30) days within which to correct any deficiency on his books. After the 30-day period, the Union may audit the books of that Employer. If the audit shows that the Employer has corrected any and all violations, then it shall not be regarded as "willful," and the audit shall be paid for by the Union. If, on the other hand, the audit shows that said Employer has not corrected all violations, then it shall be regarded as "willful," and he shall be made to pay the costs of the audit and also pay the other items agreed upon as "damages," plus fifteen percent (15%) interest.

**47. CONSOLIDATION OF JOBS** - (1) The Employer shall make every effort to consolidate jobs wherever it is feasible to do so, in order that his employees will be covered by the Health and Pension Funds under Article X.

(2) If the Union finds that an Employer has failed to effect a job consolidation which the Union considers feasible, the Union may request such consolidation from the Employer in writing. If the Employer fails to effect the requested consolidation within fifteen (15) days after receipt of the Union's notice, he shall be required to make payments into the 32BJ Health and Pension Funds which are sufficient to cover the employees in question, unless, during the said period, the Employer invokes the provisions of Section 3.

46

(3) Whenever an Employer believes that it would not be feasible for him to effect a job consolidation requested by the Union, or that he requires some other type of relief, such as additional time in which to effect the consolidation, he may communicate with the Union in writing, setting forth his reasons in detail. The Union may then afford the Employer some or all of the requested relief by means of a written notice. If the Union rejects the Employer's request, it must do so in writing, and the Employer shall effect the requested consolidation within fifteen (15) days after receipt of the Union's notice, or he shall be required to make payments into the 32BJ Health and Pension Funds which are sufficient to cover the employees in question, unless, during the same period, the Employer invokes the provisions of Section 4.

(4) If the Employer still believes that it would not be feasible for him to effect the job consolidation requested by the Union, he may submit the matter directly to the Contract Arbitrator. In making his award, the Arbitrator shall take into consideration the following factors:

(a)    The primary purpose is to provide health and pension coverage for the maximum number of employees under this Agreement and to prevent circumvention with respect to such coverage.

(b)    (1.) Inability to do a job in more than a prescribed number of hours because of the conditions prevailing on the job, coupled with the fact that other work cannot be made available to the employee or because jobs are so isolated as to make it impracticable to consolidate.
(2.) Refusal of employees to work more than the assigned number of hours and the inability of the Employer to replace such employee with employees who are willing to work longer hours.

(5) If the Arbitrator should find that an Employer's refusal to consolidate was in willful violation of the criteria set forth, he may require payments into the Health, Pension, SRSF, Training and/or Legal funds on a retroactive basis.

**48. PERSISTENT CONTRACT VIOLATORS** - The attorneys for the parties will discuss remedies appropriate to persistent contract violators for incorporation into the Agreement and whatever is agreed upon shall be in a supplemental memorandum as part of the Agreement.

**49. GENERAL PROVISIONS WITH RESPECT TO THIS AND OTHER AGREEMENTS** - All contracts must be signed in all trade names as well as all corporate and partnership names, it being the intention of the parties that if various businesses are operated out of the same office, or if any person is a part owner of a number of concerns either through a corporation, partnership or otherwise, then this contract shall be deemed to cover all of such concerns.

The Employer shall submit to the Union a list of the names of its subsidiaries and affiliates. This list shall include all trade, corporate and partnership names. Should there be a violation of this provision, then the Arbitrator named herein shall have the power to award as

47

damages the difference between the amount that would have been due to the employee and the Union under this contract and the amounts actually paid, all to be paid effective retroactively to the beginning of such employment.

**50. COMMON DISASTER** - There shall be no loss of pay as a result of any Act of God or common disaster causing the shutdown of all or virtually all public transportation in the City of New York, making it impossible for employees to report for work, or where the Mayor of the City of New York or Governor of the State of New York directs the citizens of the City not to report to work. The Employer shall not be liable for loss of pay for more than the first full day affected by such Act of God or common disaster. Employees necessary to maintain the safety or security of the building shall be paid only if they have no reasonable way to report to work and employees refusing the Employer's offer of alternate transportation shall not qualify for such pay. The term "public transportation" as used herein shall include buses and trains.

**51. CUSPIDORS** - Employees will not be required to clean cuspidors.

**52. LIE DETECTOR** - The Employer shall not require, request or suggest that an employee or applicant for employment take a polygraph or any other form of lie detector test.

**53. SNOW REMOVAL** - In the event an employee is required to remove snow, he shall be furnished adequate clothing and equipment by the Employer.

**54. NO SUBCONTRACTING** - There shall be no subcontracting of bargaining unit work during the term of this Agreement.

**55. FIRE SAFETY DIRECTOR** - The regularly assigned Fire Safety Director, appointed by the Employer and certified by the Fire Department, shall be paid a lump-sum bonus of $500.00 per year on December 1 of each calendar year. This shall not include a relief person or temporary replacement.

If more than one person serves in the same Fire Safety Director position during the year, the bonus shall be prorated.

The Employer shall have the right to designate the Fire Safety Director.

**56. SECURITY BACKGROUND CHECKS**

All employees shall be subject to security background checks at any time. An employee shall cooperate with an Employer as necessary for obtaining security background checks. Any employee who refuses to cooperate shall be subject to termination. Employees who fail such security background check shall be subject to termination.

For the purpose of this provision, just cause to terminate an employee who has failed a security background check exists only if it is established that one or more of the findings of the background security check is directly related to his/her job functions or responsibilities, or that the continuation of employment would involve an unreasonable risk to property or to the safety

48

or welfare of specific individuals or the general public or constitute a violation of any applicable governmental rule or regulation. If the customer determines that the employee has failed a security background check, but the Employer lacks cause for termination under this provision, the terms of Article XII, Section 1(c) shall apply.

**57. SAVING CLAUSE -** If any provision of this Agreement shall be held illegal or of no legal effect, it shall be deemed null and void without affecting the obligations of the balance of this Agreement.

**58. COMPLETE AGREEMENT -** This Agreement constitutes the full understanding between the parties and, except as they may otherwise agree, there shall be no demand by either party for the negotiation or renegotiation of any matter covered or not covered by the provisions hereof.

**IN WITNESS WHEREOF,** the parties have hereunto set their hands and seals the day and year first above written.

Dated: New York, N.Y.

___July 6, 2006_____          **EMPLOYER:**

Dwight Sypolt

**SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 32BJ**

By:_____
        Michael P. Fishman, President

Dated: ____7/7/06____

49

# SIDE LETTER

October 1, 2004

Michael Fishman
Local 32BJ, SEIU
101 Avenue of the Americas
New York, New York

Re:    **Maintenance of Benefits**

Dear Mike:

The benefit plan under the Building Service 32BJ Health Fund shall be amended as follows:

Beginning July 1, 2005, and each six months thereafter, the Trustees shall review statements of expenses incurred (including without limitation the amortization of any loan to the Fund) and projected costs as prepared by Fund consultants dated and attached hereto. In the event that at any such six month interval expenses and costs have exceeded the projections, the Trustees shall implement cost saving measures sufficient to eliminate the first ten million dollars (annualized) of any such deficit, with a maximum of twenty million dollars during the term of the 2005 Commercial Bargaining Agreement.

The Trustees shall not implement any increases in Employer contributions pursuant to Article XI A section 6 of the Collective Bargaining Agreement until the terms of the preceding paragraph have been implemented.

Sincerely,


James F. Berg
President, RAB


**AGREED:**


Michael Fishman
President, Local 32BJ, SEIU

50

SIDE LETTER

October 1, 2004

Michael Fishman
Local 32BJ, SEIU
101 Avenue of the Americas
New York, New York

**Re:     Security Background Checks**

Dear Mike:

This will confirm our understanding during our recent negotiations that an Employer may not invoke Article XIX (General Clauses) (Security background checks) in connection with a Social Security "no match" letter.

Sincerely,


James F. Berg
President, RAB


**AGREED:**


Michael Fishman
President, Local 32BJ, SEIU

51