UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
BUILDING SERVICE 32B-J BENEFIT         :
FUNDS,                                 :
                                       :  Case No. 07 Civ. 8381 (HB)
       Plaintiffs,                     :
                                       :
  -against-                           :
                                       :
GCA SERVICES GROUP, INC.,              :
                                       :
       Defendant.                      :
------------------------------------------------------------X

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO FOR SUMMARY JUDGMENT

> W. Eric Baisden (Ohio Bar No. 0055763)
> Jeffrey J. Lauderdale (Ohio Bar No. 0074859)
> CALFEE, HALTER & GRISWOLD LLP
> 800 Superior Avenue, Ste. 1400
> Cleveland, Ohio 44114-2688
> Tel.: 216-622-8200
> Fax: 216-241-0816
>
> Maura J. Wogan (MW-9589))
> Nicole I. Hyland (NH-7646)
> FRANKFURT KURNIT KLEIN & SELZ, P.C.
> 488 Madison Ave., 10th Floor
> New York, New York 10022
> Tel.: 212-980-0120
> Fax: 212-593-9175
>
> *Attorneys for Defendant GCA Services Group, Inc.*

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................................2

FACTS ............................................................................................................................................2

POINT I PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT SHOULD BE
      DENIED ...............................................................................................................................5

    A.    Standard of Review. ................................................................................................5

    B.    The Funds' Calculation of Amounts Owed by GCA is Unsupported and
          Should be Disregarded.............................................................................................6

         1.    A Portion of the Funds' Statement of Material Facts Should be
             Stricken Pursuant to Local R. 56.1(d). ........................................................6

         2.    The Amounts That the Funds Now Claim are Owed are
             Contradictory to the Allegations of Their Complaint..................................7

    C.    There is a Genuine Issue of Material Fact With Respect to What GCA
          Owed Under the CBA..............................................................................................8

         1.    GCA Made its Required Contributions for Fourth Quarter 2006
             (December 2006). .........................................................................................8

         2.    The Funds Are Not Entitled to the Penalties They Seek for GCA's
             Failure to Make Certain Contributions for Second Quarter 2007
             (June/July 2007). ........................................................................................11

CONCLUSION ..............................................................................................................................12

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ........................................................ 5

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .................................................................... 6

*Operating Eng'rs Local 139 Health Benefit Fund v. Gustafson Construction
    Corp.*, 258 F.3d 645 (7th Cir. 2001) ............................................................................ 11

## FEDERAL STATUTES

29 U.S.C. §§ 152(2), (6), (7) ................................................................................................ 3

29 U.S.C. §186(c)(5) ............................................................................................................ 3

29 U.S.C. §§1002(5), (11), (12) ........................................................................................... 3

29 U.S.C. §1132(g)(2)(c) ................................................................................................ 3, 11

29 U.S.C. §1145 ................................................................................................................ 3, 7

Fed. R. Civ. P. 56(e)(e) .................................................................................................... 5, 6

Defendant, GCA Services Group, Inc. ("GCA"), by and through his attorneys, respectfully submits this Memorandum of Law in Opposition to the Motion for Summary Judgment filed by Plaintiffs, Building Service 32B-J Benefits Funds (the "Funds"), on the claims they brought against GCA under the Employee Retirement Income Security Act ("ERISA") and the Taft-Hartley Act, 29 U.S.C. §141, *et seq.*

## INTRODUCTION

In their Complaint, the Funds alleged that GCA failed to make certain contributions required by the collective bargaining agreement in place between it and the Service Employees International Union, Local 32BJ, AFL-CIO (the "Union"), the labor union to which a number of its employees belonged prior to July 2007.

In their Complaint, the Funds allege that GCA failed to make any contributions between July 2006 and July 2007. In their Motion, the Funds revamped their claim and now allege only that GCA underpaid its required contributions for the Fourth Quarter of 2006 and the Second Quarter of 2007. However, regardless of their theory, the Funds' Motion is unsupported by any evidence of the amounts that GCA owed for those quarters. Any decision on what GCA owed — and hence, whether it underpaid — will be based entirely on an examination of the composition of GCA's workforce for the quarters in question and the hours worked by those employees, issues for which the Funds have submitted no evidence. Accordingly, what GCA owed to the Funds is inherently an issue of material fact for which summary judgment is inappropriate.

## FACTS

During the timeframe at issue in this lawsuit, GCA employed a number of service workers who performed various housekeeping, maintenance, and groundskeeping duties at St.

John's University in New York City. The vast majority of these service workers were members of the Union, with which GCA was a party to a collective bargaining agreement (the "CBA"). *See* CBA, a copy of which is attached as Exhibit A to the Affidavit of Carmen Melendez in support of the Funds' Motion for Summary Judgment ("Melendez Affidavit"). The CBA required that GCA make various payments into the Funds that are the plaintiffs in this lawsuit. Although the Funds who are the plaintiffs in this lawsuit have never identified themselves as anything more than the "Building Service 32B-J Benefits Funds" in the aggregate, the CBA required GCA to make payments to five funds: a "Health Fund," a "Pension Fund," an "Educational and Training Fund," a "Legal Services Fund," and a "Supplemental Retirement and Savings Fund." *See* Melendez Affidavit, Ex. A, at 23-30.

The Funds are employee benefit plans under ERISA, 29 U.S.C. §§1002(1), (2), (3) and 1132(d)(1), and the Taft-Hartley Act, 29 U.S.C. §186(c)(5). GCA is an employer under ERISA, 29 U.S.C. §1002(5), (11), and (12), and the Taft-Hartley Act, 29 U.S.C. §§ 152(2), (6) and (7). The Taft-Hartley Act authorizes employers to make periodic contributions to trust funds established for their employees through a collective bargaining agreement. 29 U.S.C. §186(c)(5). ERISA obligates any employers bound by a collective bargaining agreement to make contributions in accordance with the terms of the agreement. 29 U.S.C. §1145.

Pursuant to the terms of the CBA, GCA was required to make different payments into each of the funds identified in the CBA. For instance, beginning in January 2006, GCA was required to pay to the "Health Fund" $9,750.64 per year ($812.99 per month) for each eligible employee. Melendez Affidavit, Ex. A, at 24. Beginning January 2007, it was required to pay $10,790.64 per year ($899.22 per month) per employee. *Id.* at 25. Likewise, with respect to the "Pension Fund," beginning January 2006, GCA was required to pay $49.75 per week for every "regular employee," and, beginning January 2007, $58.75 per week. *Id.* at 26.

Further, GCA was required to make smaller contributions to the remaining funds. It was required to make contributions to the "Educational and Training Fund" in the amount of $145.60 per year ($12.13 per month) for each employee. *Id.* at 27. It was required to make contributions to the "Legal Services Fund" in the amount of $223.60 per year ($18.63 per month) for each employee. *Id.* at 28. And, lastly, it was required to make contributions to the "Supplemental Retirement and Savings Fund" in the amount of $13.00 per week per employee. *Id.* The obligations GCA had to these last three funds did not increase between 2006 and 2007. *See id.* at 27-28.

Of course, the employees for whom GCA was required to make contributions was limited by certain parameters. For instance, the CBA contained a three-month waiting period for new employees who were hired after April 1, 1996. Such employees were not eligible to become members of any of the funds during that waiting period and GCA was not required to contribute anything to any of the funds on those employees' behalf. *See id.* at 29-30. Further, GCA was not required to make payments into the "Health Fund" for employees who worked two or fewer days per week. *See id.* at 23.

Each quarter, GCA submitted a series of remittance reports for the preceding three-month period. Accordingly, because the Funds have limited their claims to the timeframe between July 2006 and June 2007, *see* Complaint, at 8; and specifically, to the Fourth Quarter of 2006 and the Second Quarter of 2007, *see* the Funds' Statement of Material Facts; there are only two quarters (and, thus, two series of remittance reports) that are relevant to this case. Specifically, those relevant quarters are those that ended December 2006 and June 2007.

In their Motion and supporting papers, the Funds have made allegations that GCA "owes Pension and Supplemental Retirement contributions for April, May, June, and July 2007; and Health, Legal and Training contributions for July 2007," *see* the Funds' Statement of Materials

Facts, at ¶6; and that GCA "did not file reports with its contribution in January 2007 for the October-December, 2006 quarter" and underpaid its required contributions for that timeframe. *Id.* at ¶7. In total, the Funds determined that GCA "owes $291,835.83 in unpaid principal contribution." *Id.* at ¶8. However, the Funds' determination is entirely conclusory and contains no information regarding how the Funds reached their calculation. What GCA owed to the Funds is determined solely by the composition of its workforce, the hours worked, and whether its workers are "covered" employees under the CBA for whom GCA was required to make contributions. The Funds have presented no evidence regarding GCA's workforce, and as a result, have failed to demonstrate that there is no genuine issue of material fact regarding whether GCA underpaid. Accordingly, the Funds' Motion should be denied.

## POINT I

## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED

### A.   Standard of Review

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be entered if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The U.S. Supreme Court has recognized that summary judgment should be granted if, "under governing law, there can be but one reasonable conclusion," and that conclusion is adverse to the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

Summary judgment is appropriate where, even construing the facts most strongly in favor of the non-movant, the proper resolution of issues of law requires that judgment be entered on

behalf of the moving party. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

### B. The Funds' Calculation of Amounts Owed by GCA is Unsupported and Should be Disregarded.

#### 1. A Portion of the Funds' Statement of Material Facts Should be Stricken Pursuant to Local R. 56.1(d).

Local Rule 56.1(d) provides:

> Each statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact by a movant or opponent must be followed by citation to evidence which would be admissible, set forth as required by Federal Rule of Civil Procedure 56(e).

A number of the key facts alleged by the Funds in their Statement of Material Facts contain no such support and, therefore, should be disregarded by this Court pursuant to Local Rule 56.1(d).

Specifically, the Funds, in their Statement of Material Facts, allege that "Defendant owes Pension and Supplemental Retirement Benefits for April, May, June, and July 2007; and Health, Legal, and Training contributions for July 2007." The Funds' Statement of Material Facts, at ¶6. Further, the Funds allege that "Defendants did not file reports with its contributions in January 2007 for the October-December 2006 quarter." *Id.* at ¶7. Moreover, the Funds allege that "Defendant owes $291,835.83" in unpaid principal contributions." *Id.* at ¶8. The Funds provide no citations to any admissible evidence along with these conclusory statements, and as stated below, GCA submitted remittance reports for the Fourth Quarter of 2006 and has no idea how the Funds calculated the number contained in ¶8 of their Statement of Material Facts. Regardless, because the Funds failed to place any citations for these allegations in their Statement of Material Facts, they should be given no credence and disregarded by this Court when considering the Funds' Motion.

## 2. The Amounts That the Funds Now Claim are Owed are Contradictory to the Allegations of Their Complaint.

Ultimately, the amount that the Funds claim is due in their Motion for Summary Judgment is wholly unsupported and, perhaps more importantly, contradicts the amounts stated in their Complaint. In Count I of their Complaint, the Funds averred that GCA made *no* contributions to the Funds from July 2006 through the "quarter 4-6/2007." Complaint, at ¶8. Specifically, the Funds stated that, during that particular timeframe, "there became due and owing to Funds from Defendant the estimated *amount of $537,377.53*" and that "*none* of the contributions contractually due to the Funds has been paid by the Defendant." *Id.* at ¶¶8-9 (emphasis added). Count II re-stated GCA's alleged failure to make any contributions to the Funds under ERISA §515, 29 U.S.C. §1145, which provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

Accordingly, both counts of the Funds' Complaint alleged the same thing: that GCA failed to make *any* payments into the Funds for the time period July 2006 through July 2007.

In their Motion for Summary Judgment, the Funds completely re-stated the premise of this lawsuit. No longer do they allege that GCA failed to make *any* payments, and, therefore, that GCA owes the Funds an "estimated *amount of $537,377.53*," as stated in the Complaint. Complaint, at ¶8 (emphasis added). Rather, now the Funds seem to concede that GCA made many payments during the relevant timeframe, but that GCA nonetheless owes the Funds $291,835.83 for underpayments in the Fourth Quarter of 2006 and the Second Quarter of 2007. The Funds' inability to present a consistent theory demonstrates that a genuine issue of material fact exists and that their Motion should be denied.

  C. **There is a Genuine Issue of Material Fact With Respect to What GCA Owed Under the CBA.**

The ever-changing position of the Funds with respect to what, if anything, GCA owes highlights that a genuine issue of material fact is present in this case. Not only is there an issue between the Funds and GCA, but, apparently, there exists a genuine issue within the Funds' own mind. They have no idea what GCA owes.

Moreover, in their Motion for Summary Judgment, the Funds have provided absolutely no basis for their calculations, which seem to be founded on little more than pure hypothesis. Accordingly, a genuine issue of material fact exists, and the Funds' Motion should be denied.

  1. **GCA Made its Required Contributions for Fourth Quarter 2006 (December 2006).**

In their Motion for Summary Judgment (but not in their Complaint), the Funds allege that GCA underpaid for the Fourth Quarter of 2006. As it did every quarter, GCA drafted a series of remittance reports for this time period. This series of reports consists of three reports, each for a different class of employees. *See* December 2006 Reports, attached as Exhibit 1 to the Affidavit of Marti Lincoln, dated March 24, 2008 ("Lincoln Affidavit"), submitted herewith and incorporated herein by reference.

The first report ("December-1") is a one-page report, containing the names of four employees, who worked an aggregate total of fifty-two weeks and twelve months during the quarter. The math in the ledger at the bottom of December-1 is accurate: GCA calculated a total of $9,750.60 for the Health Fund ($812.55 per employee per month multiplied by 12 aggregate months); a total of $2,587.00 for the Pension Fund ($49.75 per employee per week multiplied by 52 aggregate weeks); a total of $223.56 for the Legal Services Fund ($18.63 per employee per month multiplied by 12 aggregate months); a total of $676.00 for the Supplemental Retirement and Savings Fund ($13.00 per employee per week multiplied by 52 aggregate weeks); and a total

of $145.56 for the Educational and Training Fund ($12.13 per employee per month multiplied by 12 aggregate months). These five items added together, GCA appropriately calculated a total of $13,382.72 for December-1. *See* Lincoln Affidavit, Ex.1.

The other two December 2006 reports are similarly accurate. The second report ("December-2") is a two-page report containing the names of 24 employees, who worked an aggregate total of 273 weeks and 69 months during the quarter. The math in the ledger at the bottom of December-2 is likewise sound: GCA calculated a total of $56,065/95 for the Health Fund ($812.55 per employee per month multiplied by 69 aggregate months); a total of $13,581.75 for the Pension Fund ($49.75 per employee per week multiplied by 273 aggregate weeks); a total of $1,285.47 for the Legal Services Fund ($18.63 per employee per month multiplied by 69 aggregate months); a total of $3,549.00 for the Supplemental retirement and Savings Fund ($13.00 per employee per week multiplied by 273 aggregate weeks); and a total of $836.97 for the Educational and Training Plan ($12.13 per employee per month multiplied by 69 aggregate months). *See* Lincoln Affidavit, Ex.1. These five items added together, GCA appropriately calculated a total of $75,319.14 for December-2.

The third December 2006 report ("December-3") is an eleven-page report containing the names of 131 employees, who worked an aggregate total of 1,466 weeks and 373 months during the quarter. The math in the ledger at the bottom of December-3 is likewise sound: GCA calculated a total of $303,081.15 for the Health Fund ($812.55 per employee per month multiplied by 373 aggregate months); a total of $72,933.50 for the Pension Fund ($49.75 per employee per week multiplied by 1,466 aggregate weeks); a total of $6,948.99 for the Legal Services Fund ($18.63 per employee per week multiplied by 1,466 aggregate weeks); a total of $19,058.00 for the Supplemental Retirement and Savings Fund ($13.00 per employee per week multiplied by 1,466 aggregate weeks); and a total of $4,524.49 for the Educational and Training

Fund ($12.13 per employee per month multiplied by 373 aggregate months). *See* Lincoln Affidavit, Ex.1. These five items added together, GCA appropriately calculated a total of $406,546.13 for December-3.

Thus, GCA calculated a total of $13,382.72 for December-1, $75,319.14 for December-2, and $406,546.13 for December-3 for a total of $495,247.99. On November 17, 2006, GCA also had sent a letter to the Union informing it of a previous overpayment of $3,345.68 that it had paid. *See* November 17, 2006 Letter, attached as Exhibit 2 to Lincoln Affidavit. GCA requested that it be given a credit for this amount on its December 2006 payment, which would decrease the total of $495,247.99 to $491,902.31. *See id.* This is exactly the amount of the check that GCA submitted to the Funds. *See* Check Request, attached as Exhibit 3 to Lincoln Affidavit.

In their Motion, the Funds, in a conclusory manner, declare that they "determined that [GCA] underpaid for" the Fourth Quarter of 2006, but nowhere explain how they calculated a discrepancy or why the payment made by GCA for that quarter was insufficient. *See* The Funds' Statement of Material Facts, at ¶7. The Funds have provided no evidence of any employees for whom GCA was required to make contributions that it did not. As a result, there is a genuine issue of material fact regarding whether GCA underpaid its contributions for the Fourth Quarter of 2006.

Furthermore, the Funds admit that their conclusion was drawn not from an analysis of GCA's workforce for the Fourth Quarter of 2006, but from an *ad hoc* analysis of GCA's workforce in previous quarters. *See* Melendez Affidavit, at ¶10. Such an analysis is flawed because the amount that GCA owes in a given quarter is governed not by its previous reports, but by the composition of its workforce. Accordingly, there remains a genuine issue of material fact regarding whether GCA underpaid for the Fourth Quarter of 2006, and the Funds' Motion should be denied.

> 2. **The Funds Are Not Entitled to the Penalties They Seek for GCA's Failure to Make Certain Contributions for Second Quarter 2007 (June/July 2007).**

Similarly, although GCA does not dispute that some payments for the Second Quarter of 2007 may not have been timely made, the Funds are not entitled to the extreme penalties they seek. In the papers supporting their Motion for Summary Judgment, the Funds submit that they should be entitled to "interest on unpaid contributions at 6% per annum and liquidated damages at 2% per month." *See* the Funds' Statement of Material Facts, at ¶9. By extrapolation, the Funds therefore seek liquidated damages equal to at least ***24% per annum*** (depending on how the interest is compounded).

Such a penalty is expressly prohibited by ERISA. Indeed, ERISA provides that in a suit for contributions, the fund is entitled not only to the contributions but also to interest on them at the interest rate "provided under the plan" plus an amount equal to the greater of that interest or "liquidated damages provided for under the plan in an amount ***not in excess of 20 percent*** (or such higher percentage as may be permitted under Federal or State law) of the [unpaid contributions]." 29 U.S.C. §1132(g)(2)(C) (emphasis added). The damages that the Funds seek far exceed the limits set forth in §1132(g)(2)(C). *See also Operating Eng'rs Local 139 Health Benefit Fund v. Gustafson Construction Corp.*, 258 F.3d 645, 654 (7th Cir. 2001) (discussing liquidated damages limit). Accordingly, with respect to its penalty provisions, the CBA, because it appears to allow for liquidated damages in excess of the limits placed thereon by ERISA, should be disregarded in their entirety.

As a result, to the extent that the Funds can prove that certain contributions were not made by GCA, the Funds' recovery should be limited only to the contributions plus interest under the CBA. The liquidated damages that the Funds seek run afoul of ERISA and cannot be awarded to the Funds under federal law.

Moreover, although GCA does not dispute that some payments for the Second Quarter of 2007 may not have been timely made, the Funds still have provided *no* basis for their determination of the amount owed. In their moving papers, the Funds conclude, without analysis, or mathematical support that GCA "owes $291,835.83 in unpaid principal contribution." The Funds' Statement of Material Facts, at ¶8. Moreover, as stated above, the Funds do not even provide any citation for this number as required by Local Rule 56.1(d). Accordingly, there is a genuine issue of material fact with respect to the amount owed by GCA, and the Funds' Motion should be denied.

## CONCLUSION

For the foregoing reasons, there is a genuine issue of material fact with respect to what, if anything, GCA owes the Funds. In their Complaint, the Funds allege that "none of the contributions contractually due to the Funds has been paid by the Defendant." Complaint, at ¶¶8-9. There is no doubt that this is untrue, as the Funds now seem to concede that GCA made many payments during that timeframe. Further, there is a genuine issue of material fact with respect to whether GCA underpaid for the Fourth Quarter of 2006. GCA submitted remittance reports for that quarter and paid according to those reports. The Funds have provided no support for their bald allegation that there was an underpayment. Furthermore, the penalties that the

Funds seek on any underpayment they may be able to prove are contrary to ERISA, and should be disregarded. Accordingly, summary judgment is inappropriate.

Dated: New York, New York
       March 24, 2008

                CALFEE, HALTER & GRISWOLD LLP

                By: _____
                    W. Eric Baisden (Ohio Bar No. 0055763)
                    Jeffrey J. Lauderdale (Ohio Bar No. 0074859)

                800 Superior Avenue, Ste. 1400
                Cleveland, Ohio 44114-2688
                Tel.: 216-622-8200
                Fax: 216-241-0816

                *Attorneys for Defendant GCA Services Group, Inc.*